UNITED STATES, Appellee,

v.

Alvin W. DODSON, Jr., Private First
Class U.S. Marine Corps, Appellant.

No. 47612.

NMCM 82–3623.

U.S. Court of Military Appeals.

Jan. 27, 1986.

For Appellant: *Kathleen J. Purcell,
Esq.,* and *Joseph Remcho, Esq.* (on brief);
*Commander David C. Larson, JAGC,
USNR.*

For Appellee: *Captain W.J. Hughes,
JAGC, USN,* and *Lieutenant William V.
Cerbone, Jr., JAGC, USNR* (on brief);
*Captain Carl H. Horst, JAGC, USN,* and
*Major J.S. Uberman, USMC.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-
martial composed of members in Septem-
ber and December 1981 at Camp Foster,
Okinawa. Contrary to his pleas, he was
found guilty of attempted robbery, conspir-
acy to commit robbery, premeditated mur-
der, felony murder, robbery and wrongful
communication of a threat, in violation of
Articles 80, 81, 118(1), 118(4), 122, and 134,
Uniform Code of Military Justice, 10 U.S.C.
§§ 880, 881, 918(1), 918(4), 922, and 934,
respectively. He was sentenced to a dis-
honorable discharge, confinement at hard
labor for life, total forfeitures, and reduc-
tion to the lowest enlisted pay grade. The
convening authority approved the findings
of guilty and the sentence. The Court of
Military Review affirmed. 16 M.J. 921
(1983).

This Court granted review on the following issue raised by appellate defense counsel.

WHETHER IT WAS PROPER TO ALLOW EXTRINSIC EVIDENCE OF STATEMENTS PURPORTEDLY MADE BY THE CO–ACCUSED GARRETT UNDER THE GUISE OF IMPEACHING GARRETT.

This Court also specified the following issue for review.

WHETHER SPECIFICATION 2, CHARGE III (FELONY MURDER) IS MULTIPLICIOUS WITH SPECIFICATION 1, CHARGE III (PREMEDITATED MURDER) AND SHOULD BE DISMISSED.

## I

The facts surrounding the granted issue are fully detailed in the Court of Military Review's decision cited above. Appellant basically asserts that the military judge erred in allowing trial counsel to impeach his own witness by extrinsic evidence of prior inconsistent statements. *See generally United States v. Banker*, 15 M.J. 207, 211 (C.M.A.1983). Such evidence, he argues, was unduly prejudicial within the meaning of Mil.R.Evid. 403 because it also constituted inadmissible substantive evidence of his guilt of the charged offenses. *See generally United States v. Morlang*, 531 F.2d 183 (4th Cir.1975). He also argues that the prosecution's impeachment proffer under Mil.R.Evid. 613(b) was a subterfuge to put this inadmissible substantive evidence before the court members. *See United States v. Dennis*, 625 F.2d 782, 796 (8th Cir 1980).

■■■ We agree with the court below that such impeachment was proper under Mil.R.Evid. 607 and 613(b). *See generally United States v. Hogan*, 763 F.2d 697, 701–

03 (5th Cir.1985). We also agree with the lower court's finding that the trial judge did not abuse his discretion provided in Mil.R.Evid. 403 in permitting the admission of this impeachment evidence. *See United States v. Dodson, supra* at 928; *see generally United States v. Martin*, 20 M.J. 227 (C.M.A.1985).* Finally, we conclude that the evidence of record supports the Court of Military Review's finding that no bad faith existed on the part of the prosecution in the present case. Article 66, UCMJ, 10 U.S.C. § 866.

## II

■■■ The specified issue in this case can be resolved on the basis of the decision of this Court in *United States v. Teeter*, 16 M.J. 68 (C.M.A.1983). "[T]he homicide elements of felony-murder are included within premeditated murder, and" the robbery "elements of felony-murder are the same as those of the separate" robbery offense. "[A]ll of the elements of felony-murder ... fall within the ... premeditated murder" and robbery offenses. "Therefore, we hold that the felony murder charge is multiplicious" (*id.* at 72) and must be dismissed. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *See Ball v. United States*, —— U.S. ——, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *United States v. Baker*, 14 M.J. 361 (C.M.A.1983). However, we are satisfied that this multiplicity did not prejudice appellant as to sentence.

## III

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to specification 2 of Charge III. The finding of guilty thereon is set aside and that specification is dismissed. In all other respects the decision below is affirmed.

---

* We disagree with appellant's assertion that even the Court of Military Review used Robbins' testimony as substantive evidence of his guilt. That court expressly referred to the testimony of Mrs. Gould in this regard. *See United States v. Dodson*, 16 M.J. 921, 928 (1983). We also do not agree that the limiting instructions given by the military judge in this case were insufficient to cure any undue prejudice which might result from the admission of this impeachment evidence. *United States v. DeLillo*, 620 F.2d 939, 946, 947 (2d Cir.1980). *Cf. United States v. Hogan*, 763 F.2d 697, 702 (5th Cir.1985). *See generally United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 471, 83 L.Ed.2d 450 (1984).

EVERETT, Chief Judge (concurring):

From my consideration of the relevant facts, which are set out in the decision of the Court of Military Review, 16 M.J. 921 (N.M.C.M.R.1983), I agree that the Government had a legitimate purpose in calling appellant's coaccused, Garrett, as a witness. It was important to establish through him that appellant had been his companion on the evening of the murder.

I am not fully convinced, however, of trial counsel's need to ask Garrett, on direct examination, whether he had been carrying a knife at the time, when—from the events in Garrett's own trial—the trial counsel must have known he would deny this. Indeed, a reading of the entire record might suggest that trial counsel asked this question solely to provide a basis to have Garrett's prior statements introduced as impeachment evidence, *see* Mil.R.Evid. 613(b), and in the hope that the court members would then consider this evidence for a substantive purpose, for which it would be inadmissible, *see* Mil.R.Evid. 801(d)(1)(A). Nonetheless, because there is some basis for determining otherwise, I shall give trial counsel the benefit of the doubt and join the military judge in assuming that this question was not asked in bad faith and for an improper purpose.

Regardless of trial counsel's purpose, a significant risk existed that, once admitted, the impeachment evidence—Garrett's extrajudicial statements to a fellow prisoner—would be used by the court members as substantive evidence that he had possessed a knife when he and appellant had encountered the victim on the evening of the homicide. Even though a military judge can instruct the court members as to the limited purpose for which impeachment evidence can be used—just as was done in this case—the risk of prejudice from an improper substantive use of the impeachment evidence is high. Therefore, as to such evidence, a sensitive application of Mil.R.Evid. 403 is important in assuring a fair trial.

As the authors commented in S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 176, "Rule 403 may be the most important new Rule." One of the reasons for this view is that it gives the military judge "enormous leeway ... to judge the merits and demerits of admitting any evidence that satisfies the other Rules of Evidence." *Id.* To resolve properly an objection lodged under this rule, "the judge should carefully analyze the nature of the case, the court-members, the other evidence in the case and the way the case has been presented in order to estimate the real likelihood in the particular case that the evidence would prejudice the court-members hearing the case." *Id.* at 177.

From my consideration of this case and some others, I have the impression that not all trial judges are performing this very important balancing task when a party suggests that evidence otherwise admissible—either generally or for a limited purpose—may unfairly prejudice his side. My concern would be ameliorated somewhat by more frequent use of special findings, as urged by the authors of the *Military Rules of Evidence Manual, supra,* who point out:

Special findings will provide trial and appellate courts with two obvious benefits. First, appellate courts will be able to appreciate the formula used to resolve complex issues below. As a result, reversals for abuse of discretion will be greatly reduced. The second benefit of special findings is that they provide counsel with an opportunity to correct erroneous resolutions in the trial court, rather than months or years later on appeal.

*Id.*

In this case, I have concluded that—in light of the limiting instructions—appellant was not prejudiced by receipt of Garrett's pretrial statements in evidence. However, I would be more comfortable with the result if the military judge had entered special findings which explained how he performed the sensitive balancing required by Mil.R.Evid. 403.