UNITED STATES, Appellee,

v.

Sergeant First Class Ervin M. GRAVES, United States Army, Appellant.

ARMY 9401271.

U.S. Army Court of Criminal Appeals.

3 Dec. 1997.

---

Set aside in part and affirmed in part.

For Appellant: Captain Patricia A. Harris, JA (argued); Major Michael E. Hatch, JA; Captain Walter S. Weedman, JA (on original brief); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Michael E. Hatch, JA; Captain Patricia A. Harris, JA (brief on specified issues); Captain Norman R. Zamboni, JA; Alison Ruttenberg, Esquire.

For Appellee: Captain Thomas N. Auble, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Lyle D. Jentzer, JA; Captain Kenneth D. Albert, JA (on original brief); Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA; Captain Thomas N. Auble, JA (brief on specified issues and Petition for New Trial); Captain Chris A. Wendelbo, JA.

Before COOKE, EDWARDS, and GONZALES, Appellate Military Judges.

OPINION OF THE COURT AND ACTION
ON PETITION FOR NEW TRIAL ON
RECONSIDERATION

GONZALES, Judge:

A panel of officer and enlisted members, in a capital case, found the appellant guilty of attempted rape, premeditated murder, felony murder while engaged in the perpetration of an attempted rape, and assault with the intent to commit rape in violation of Articles 80, 118(1), 118(4), and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 918(1), 918(4), and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to Private E1.

Before this court, the appellant asserts, inter alia, in his Article 66, UCMJ, appeal: (1) that the offense of assault with the intent to commit rape is multiplicious with the offense of attempted rape, and (2) that the evidence is legally insufficient to support the findings of guilty as to the three offenses other than premeditated murder because it fails to prove beyond a reasonable doubt that the appellant possessed the specific intent to rape.

On 16 September 1997, we issued an opinion of the court in which we agreed with only the first assignment of error. In addition, we held that the felony murder charge was multiplicious with both the premeditated murder and attempted rape specifications. We also denied the appellant's petition for a new trial. Upon a Motion for Reconsideration of Denial of New Trial and Request for Sentence Relief, filed by the appellant on 20 October 1997, we vacated our original opinion on 19 November 1997. *United States v. Graves,* ARMY 9401271 (Army Ct.Crim.App.1997)(order)(unpub.). We have reconsidered our denial of the appellant's petition for new trial and in light of the matters submitted by the appellant, we adhere to our original decision.[1]

I. The Facts

Under our Article 66, UCMJ, 10 U.S.C.A. § 866, powers, we find the following facts in this case. The appellant knew his victim, Second Lieutenant (2LT) Bryant, as an officer who worked in the Protocol Office of the same ROTC advanced summer camp at Fort Bragg, North Carolina, that he was also supporting. Shortly after 0200 hours on 10 July 1993, 2LT Bryant was alone and using the public telephone located in the lobby of the second floor of Hardy Hall, a transient billeting facility. The appellant, whose room was also located on the second floor of Hardy Hall, approached 2LT Bryant and interrupted the conversation she had just started with her boyfriend in California. The appellant subsequently left the lobby area, but returned at about 0255 hours.

In the interim, the appellant made or completed preparations to effect his plan to have sexual intercourse with 2LT Bryant, without her consent and by force if necessary. Making prussic handcuff knots,[2] the appellant meticulously tied a black bootlace to three of the four lifting straps of the box spring mattress of one of the beds in his room. Two of these bootlaces were tied to the straps located on each side of the foot of the mattress. The third was tied to a strap located on one side at the head of the mattress. On the opposite side of the head of the mattress, he draped a fourth prussic handcuff knotted bootlace over the bed's headboard.[3] He retrieved a loaded .357 magnum pistol from a black bag in the closet. Finally, he turned the bolt lock of the door to his room so that the bolt was protruding.[4]

After ensuring that his room was prepared, the appellant executed several overt

---

1. We also take this opportunity to modify our findings of fact concerning the number of bootlaces that were tied to the lifting straps of one of the box spring mattresses in the appellant's room in Hardy Hall.

2. Such a knot is used to secure a prisoner or detainee. One of its unique features is that the more the person struggles, the tighter the knot becomes.

3. We have carefully examined the photographs of Prosecution Exhibits 10, 13, 14, 15, and 16 to determine the placement of the four bootlaces.

4. This prevented the door from locking closed automatically when he left his room, and allowed for the door to be pushed open easily when he returned.

acts tending to effect his plan. He left his room and again approached 2LT Bryant, who was still on the phone with her boyfriend. He caused her to stop talking in mid-sentence and to hang up the receiver. He forced her to move down the hallway to his room. He pushed open the propped door to his room and attempted to force 2LT Bryant inside and towards the bed. Second Lieutenant Bryant resisted entering further into the room. The intensity of the appellant's efforts to overcome her resistance was so brutal that he ripped an earring from her left ear, broke her gold chain necklace, and dislodged a shoe from her right foot. He eventually resorted to his loaded .357 magnum pistol in order to subdue her. She cried out, "No! Please!" The appellant, with premeditation, silenced her screams by intentionally shooting her at least twice, causing her to fall to the floor in the hallway. As she lay there, the appellant stood over her and intentionally shot her again, at least twice more. She died at approximately 0300 hours after suffering multiple bullet wounds to her head, neck, and upper back. No single shot could be identified as the one that caused 2LT Bryant's death.[5]

## II. Assault With the Intent to Commit Rape and Attempted Rape

■ Applying the rationale expressed in part V of *United States v. Weymouth,* 43 M.J. 329, 338–40 (1995); *United States v. Edwards,* 35 M.J. 351, 356–57 (C.M.A.1992); and *United States v. Gibson,* 11 M.J. 435 (C.M.A.1981), we agree with the government's concession that the assault with the intent to commit rape is, in this case, part of the attempted rape. Both offenses essentially arose out of the same series of identical acts. Although there may have been sufficient doubt as to the facts to warrant making what was essentially one transaction the basis for charging two separate offenses, no clear exigencies of proof remained after findings to warrant appellant's conviction for separate offenses. The appellant's overt acts from the time he forced 2LT Bryant off the phone until he shot her the first time constituted one continuous attempt to rape her

that consisted of several increasingly forceful and violent assaults. Accordingly, we will dismiss the assault with the intent to commit rape offense as being multiplicious with the attempted rape offense.

## III. Legal Sufficiency

■ Therefore, we will address the appellant's second contention of legal insufficiency of the evidence as applied to the two remaining sexual offenses of attempted rape and felony murder committed during the course of an attempted rape. The elements of proof of attempted rape are:

(1) that the accused did a certain overt act;

(2) that the act was done with the specific intent to commit rape;

(3) that the act amounted to more than mere preparation; and,

(4) that the act apparently tended to effect the commission of the rape.

Manual for Courts–Martial, United States, (1995 edition), Part IV, para. 4b [hereinafter MCM, 1995].

The elements of proof of felony murder committed during the course of the attempted rape are:

(1) that a certain person is dead;

(2) that the death resulted from the act or omission of the accused;

(3) that the killing was unlawful; and,

(4) that, at the time of the killing, the accused was engaged in the attempted perpetration of rape.

MCM, 1995, para. 43b(4).

The second element of proof for attempted rape and the fourth element of proof for felony murder during an attempted rape both require proof beyond a reasonable doubt that the accused had the specific intent to commit rape. *United States v. Hamer,* 12 M.J. 898, 900 (A.C.M.R.1982). The specific intent to commit rape includes the specific intent to commit an act of sexual intercourse by force and without the consent of the other

5. These facts are based on circumstantial evidence. There were no eyewitnesses who saw what happened on the second floor of Hardy

Hall between 0200 and 0300 hours on 10 July 1993, other than the deceased victim and the appellant, who did not testify at trial.

person. MCM, 1995, paras. 45a, b(1), and c(1)(a).

The appellant contends that the evidence at his trial was legally insufficient to prove that he had the specific intent to rape 2LT Bryant—the only element in dispute between the appellant and the government—and, therefore, the panel could not have found him guilty beyond a reasonable doubt of these two remaining sexual offenses. The test for legal sufficiency of the evidence is whether a reasonable factfinder, viewing the evidence in the light most favorable to the prosecution, could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The appellant relies primarily on *United States v. Sampson*, 7 M.J. 513 (A.C.M.R. 1979), to assert that the evidence is legally insufficient to show that the appellant had the specific intent to rape 2LT Bryant. In *Sampson*, the accused entered the quarters of 2LT and Mrs. J at approximately 0240 hours. Mrs. J was naked in her bathroom having just taken a shower. The accused opened the bathroom door and exposed the right half of his naked body to Mrs. J. The accused leaned towards her, reaching in the direction of her neck and shoulder with his right hand. When her screams brought an immediate response from her husband, the accused ran away. He was convicted at his trial of the attempted rape of Mrs. J.

In affirming the lesser included offense of indecent assault, this court found that although there was sufficient evidence of an overt act tending toward the completion of rape, which amounted to more than mere preparation, it could not find, because of the absence of force, sufficient proof beyond a reasonable doubt that the accused had the specific intent to rape Mrs. J. The court was convinced that the accused possessed a "generalized evil desire for gratification," but it found that this desire did not rise to a level of proof required to also establish that Sampson had the specific intent to rape. Without a showing that the accused ever intended to use force to overcome any resistance Mrs. J may have offered, the appellant could not be convicted of attempted rape. *Id.* at 516.

In reaching its decision in *Sampson*, this court cited *United States v. Polk*, 48 C.M.R. 993, 1974 WL 13973 (A.F.C.M.R.1974), where that court also affirmed the lesser included offense of indecent assault, mainly because of the absence of any application of force and brutality by the accused to rape his victim against her will. For purposes of our analysis, we note that the court described the specific intent to rape as the intent (1) to overcome any resistance by force, actual or constructive, and (2) to penetrate the woman's person. Any lesser intent will not suffice. *Id.* at 997. The court also stated that, "the specific intention to commit [rape] and the overt act must each be proven by the evidence, and proof of the overt act alone cannot be 'boot strapped' up to prove also the specific intent required." *Id.* at 996.

Since no statement by the appellant confirming or disavowing his intent to rape 2LT Bryant was offered into evidence, the appellant's intent must be inferred from all of the circumstantial evidence surrounding the offenses. *Id.* at 996. The circumstances unquestionably establish that the appellant intended to rape 2LT Bryant, and when he was foiled in his efforts, he consciously and intentionally killed her. Specifically, after the appellant had prepared his room, he returned to the second floor lobby area. He forced 2LT Bryant off the phone and caused her to move to his room where there was less chance for detection or interruption. He had fixed the door to the room for easy access in anticipation that 2LT Bryant would resist. He used brutal force in his attempt to keep her in his room and to move her towards the bed. Had he been successful, he would have tied each of her legs and one of her arms in the prussic handcuffs that were tied to three of the mattress' lifting straps. Their design and arrangement would have rendered her unable to resist while she laid on the mattress in a sexually compromising "spread-eagle" position. The more she struggled, the tighter the knots would have become. Each successive act was increasingly more forceful and indicative of the appellant's intent. Accordingly, we find that the only reasonable inference of the appellant's intent when he abducted 2LT Bryant to his room and at-

tempted to render her immobile as described above was (1) to overcome any resistance by a reluctant victim by force and then (2) to facilitate the act of sexual intercourse without her consent. Because he failed to overcome her resistance, he killed her instead. The position of the prussic handcuffs on the bed and the degree of force appellant used in an effort to get his victim to submit, plus his use of deadly force when she did not, is ample evidence of the appellant's intent to effect sexual intercourse by force and without her consent. *See United States v. Hart*, 25 M.J. 143, 147 (C.M.A.1987).

Examining the record for legal sufficiency, we are satisfied that the members of the panel, who weighed this evidence using their common sense and knowledge of human nature and the ways of the world, reasonably found beyond a reasonable doubt all of the essential elements of proof, including specific intent, for attempted rape and felony murder while engaged in the attempted perpetration of rape. Having reviewed the record of proceedings and the briefs filed by the appellant and the government, and considering the oral arguments presented by counsel, we also are convinced of the appellant's guilt of these two offenses beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

IV. Attempted Rape as a Lesser Included Offense of Felony Murder

Although we resolve the issue of specific intent against the appellant, our review of this matter raised another significant issue which we specified as follows:

IS ATTEMPTED RAPE A LESSER INCLUDED OFFENSE OF FELONY MURDER UNDER *UNITED STATES V. FOSTER*, 40 M.J. 140 (C.M.A.1994), WHEN THE PREDICATE OFFENSE OF THE FELONY MURDER IS ATTEMPTED RAPE? *SEE ALSO WHALEN V. UNITED STATES*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) AND *BROWN V. OHIO*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

■ In order to prove the fourth element of felony murder, the government was required to prove the offense of attempted rape. In accordance with *United States v.*

*Foster*, 40 M.J. 140, 142 (C.M.A.1994), it is clear under the circumstances of this case that the attempted rape is a lesser included offense of felony murder because the elements of proof for attempted rape are a subset of the elements of proof for felony murder. The greater offense—felony murder—could not possibly be committed without committing the lesser offense—attempted rape. While the appellant properly could be charged with both offenses under MCM, 1995, para. 43c(5)(b), he cannot be convicted of both the principal offense and one which is included within it. *Brown v. Ohio*, 432 U.S. 161, 165–69, 97 S.Ct. 2221, 2225–27, 53 L.Ed.2d 187 (1977); *United States v. Kibler*, 43 M.J. 725, 729 (Army Ct.Crim.App.1995). Additionally, Congress intended for there to be only one punishment in the compound-and-predicate-offense situation. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Therefore, if the felony murder conviction is affirmed by this court, under *Foster* we must dismiss the attempted rape charge as being a lesser included offense of felony murder; and conversely, if this court dismisses the felony murder charge, we can affirm the attempted rape charge. *See United States v. Dock*, 35 M.J. 627, 639 (A.C.M.R.1992), *aff'd*, 40 M.J. 112 (C.M.A.1994).

V. Multiplicity of Felony Murder

■ In determining whether to dismiss the felony murder or the attempted rape charge, as discussed above, we must consider another matter that was personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and which we specified as a second issue. Although the military judge found that the offense of felony murder under Article 118(4), UCMJ, was multiplicious with premeditated murder under Article 118(1), UCMJ, for sentencing purposes, the appellant contends that they are multiplicious for findings as well because both specifications describe the killing of the same victim. Therefore, we specified the following:

DO FELONY MURDER AND PREMEDITATED MURDER VIOLATE THE SAME STATUTORY PROVISION,

10 U.S.C. § 918, RATHER THAN "TWO DISTINCT STATUTORY PROVISIONS," THUS REQUIRING THE APPLICATION OF *UNITED STATES V. HUBBARD,* 28 M.J. 27 (C.M.A.1989), INSTEAD OF *UNITED STATES V. TETERS,* 37 M.J. 370 (C.M.A.1993), ON THE QUESTION OF WHETHER ADDITIONAL CHARGE II (FELONY MURDER) IS MULTIPLICIOUS WITH THE CHARGE (PREMEDITATED MURDER)? *SEE ALSO UNITED STATES V. TEETER,* 16 M.J. 68, 72 (1983).

■ We begin our analysis by reminding ourselves that, as a general rule, the *Teters* test for multiplicity applies only to cases where the same act or course of misconduct is charged as a violation of *two distinct* statutory provisions. *United States v. Teters,* 37 M.J. 370, 377 (C.M.A.1993)(citing *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). Thus, a constitutional violation under the Double Jeopardy Clause of the Fifth Amendment of the Constitution now occurs only if a court, contrary to the intent of Congress, imposes multiple convictions and punishments under *different* statutes for the same act or course of conduct. *Teters* at 373.

As an exception to this rule, *Teters* would apply in a case where the *same* statutory provision is the basis for both violations if Congress intended to consolidate within one statutory provision what historically had been two separate crimes. For example, Congress made the common law crime of forgery when someone either "falsely makes or alters any signature" or "utters, offers, issues or transfers such a writing," an offense in violation of one statutory provision, Article 123, UCMJ, 10 U.S.C.A. § 923. *United States v. Albrecht,* 43 M.J. 65, 68 (1995).

Article 118, UCMJ, 10 U.S.C.A. 918, is the only statutory provision in the UCMJ that proscribes murder. More specifically, it describes four circumstances in which one who kills another may be found guilty of murder. It prohibits premeditated murder in clause one (1), unpremeditated murder in clause two (2), murder as a result of inherently dangerous acts in clause three (3), and felony murder in clause four (4). In order for *Teters* to apply to the two murder specifications charged in this case, we must satisfy ourselves that Congress intended to merge into Article 118, UCMJ, what historically had been seen as four separate murder offenses. We do not believe this was its intent.

Article of War 92, the immediate predecessor to Article 118, UCMJ, defined murder as being either premeditated or not premeditated. The elements of proof for murder under the Articles of War were last stated in paragraph 179a of the 1949 Manual for Courts-Martial as follows:

(a) That the accused unlawfully killed a certain person named or described by certain means, as alleged (requiring proof that the alleged victim is dead, that his death resulted from an injury received by him, that such injury resulted from an act of the accused, and that the death occurred within a year and a day of such act);

(b) That such killing was with malice aforethought; and if alleged,

(c) that the killing was premeditated.

In discussing "malice aforethought" as state of mind, the 1949 Manual included as examples three of the four types of murder specifically mentioned in today's Article 118, UCMJ, other than premeditated. The state of mind of "[a]n intention to cause the death of, or grievous bodily harm to, any person" became "intends to kill or inflict great bodily harm" in Article 118(2), UCMJ. "[K]nowledge that the act which causes death will probably cause the death of ... any person ... even though such knowledge be accompanied by indifference whether death or great bodily harm is caused" became "is engaged in an act that is inherently dangerous to another and evinces a wanton disregard of human life" in Article 118(3), UCMJ. And finally, "intent to commit any felony [at common law such as burglary, sodomy, rape, robbery, arson, mayhem, and larceny]" became "is engaged in the perpetration or attempted perpetration of burglary, sodomy, rape, robbery, or aggravated arson" in Article 118(4), UCMJ.

When Congress changed that part of Article of War 92 which dealt with murder to Article 118, UCMJ, with its four separate

clauses, it only intended for the four clauses to represent the four different states of mind associated with murder so that they could be more easily dealt with in the trial of cases. *United States v. Craig,* 2 U.S.C.M.A. 650, 10 C.M.R. 148, 156, 1953 WL 1795 (1953) It was not Congress' intent to consolidate into one statutory provision what historically had been seen as four separate crimes. Therefore, Article 118, UCMJ, with its four different means of committing murder, does not fall within the *"Albrecht* exception" that would permit us to apply the *Teters* test for multiplicity where the *same* statutory provision is the basis for both violations.

Having concluded that *Teters* does not apply to the circumstances of the case before us, we turn now to those cases that have addressed multiplicity issues in the unique context of solely one statutory provision such as Article 118, UCMJ. Although we specifically focused each party's attention to *United States v. Hubbard,* 28 M.J. 27 (C.M.A.), *cert denied,* 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 101 (1989), in the specified issue, we believe the better approach is to follow *United States v. Teeter,* 16 M.J. 68 (C.M.A.1983) and *United States v. Dodson,* 21 M.J. 237 (C.M.A.), *cert. denied,* 479 U.S. 1006, 107 S.Ct. 644, 93 L.Ed.2d 701 (1986).

In *Teeter,* the accused was convicted of premeditated murder, felony murder while perpetrating rape, and rape of the same female victim. The Court of Military Appeals simply compared and noted that the homicide elements of the felony murder specification were included within the premeditated murder specification and that the felony elements of the felony murder specification were included within the rape specification. Therefore, the Court held that the felony murder specification was multiplicious for findings purposes with both of the other two offenses together. *Teeter,* 16 M.J. at 72. Likewise in *Dodson,* the accused was convicted of premeditated murder, felony murder while

perpetrating a robbery, and robbery of the same male victim. Again, the Court compared and noted that all of the elements of the felony murder offense fell within the elements for both premeditated murder and robbery. Therefore, the Court held that the felony murder specification was multiplicious with the other two and must be dismissed. *Dodson,* 21 M.J. at 238.

Here, the appellant was found guilty of premeditated murder, felony murder while perpetrating an attempted rape, and attempted rape. Applying the elements comparison test of *Teeter/Dodson,*[6] we find that all of the elements of felony murder are included within those necessary to prove premeditated murder and attempted rape. Therefore, the offense of felony murder is multiplicious with both of the other two and should be set aside and dismissed.[7]

### VI. Petition for New Trial

■ In his *in propria persona* petition for new trial, the petitioner (appellant) contends that he is entitled to a new trial on the grounds of newly discovered evidence and fraud on the court-martial which tried his case. A new trial based on newly discovered evidence will not be granted unless the new evidence: (1) was discovered after trial; (2) would not have been discovered at the time of trial in the exercise of due diligence; and, (3) if considered at trial, would probably have produced a substantially more favorable result for the appellant. *United States v. Suarez,* 35 M.J. 374, 377 (C.M.A.1992); Rules for Courts–Martial 1210(f)(2)(A)–(C) [hereinafter R.C.M.]. Likewise, no fraud on the court-martial warrants a new trial unless it had a substantial contributing effect on the findings of guilty or the sentence adjudged. *United States v. Scaff,* 29 M.J. 60, 65–66 n. 3 (C.M.A. 1989); R.C.M. 1210(f)(3).

■ We have, again, carefully considered the matters raised in the appellant's original petition, and his request for reconsideration,

---

6. We note that the elements comparison test of *Teeter/Dodson* is similar to the separate elements test of *Blockburger/Teters.* Although the two tests are slightly different in their approach, both involve the matching of elements to determine whether the offenses being compared are multiplicious or separate for findings purposes.

7. Nevertheless, we have reviewed the evidence relating to the felony murder offense and find it to be factually and legally sufficient to support the finding of guilty.

relating to the testimony of Mr. Anwar Hussain. The appellant contends that Mr. Hussain, testifying as an expert for the government, testified falsely about his academic qualifications and credentials as a forensic chemist, and therefore, his testimony was not credible. Mr. Hussain testified, according to the record of trial, that he had a "second master degree in organic chemistry from the University of Calcutta, Bangladesh, a bachelor degree in physical chemistry and mathematics, and an associate degree in textile chemistry from the University of Utah."

While his case was pending before us, the appellant submitted evidence, obtained after trial, which reflected that Mr. Hussain had not attended either the University of Calcutta or the University of Utah, and contended, therefore, that this testimony amounted to fraud on the court-martial.

Instead of returning the record to the military judge for a certificate of correction in accordance with Rule for Courts–Martial 1104(d), pursuant to Rule 23(a) of this court's Internal Rules of Practice and Procedure, we admitted two separate affidavits by the trial court reporter and Mr. Hussain, respectively, as Government Appellate Exhibits 1 and 2. These two exhibits reflect that Mr. Hussain actually attended, and testified that he attended, the University of Dacca, and that the reporter incorrectly transcribed the names of the universities.[8]

In his motion for reconsideration, the appellant contends that either: the record is accurate as it reads, in which case Mr. Hussain gave false testimony—necessitating a new trial; or the record is inaccurate and therefore incomplete and nonverbatim—necessitating returning the record for correction and a new staff judge advocate recommendation and convening authority action or approval of no greater sentence than could be adjudged by a special court-martial. We disagree.

We find that the record contains a transcriptional error, but that this error was insubstantial and did not render the record of trial otherwise incomplete or non-verba-

tim. *United States v. Sanders,* 37 M.J. 628, 630 (A.C.M.R.1993); *United States v. Behling,* 37 M.J. 637, 638 (A.C.M.R.1993). We are further satisfied, after review of all of the matters submitted to us, that the appellant has not shown that Mr. Hussain committed fraud on the court.

Using the standard of review for petitions for a new trial under R.C.M. 1210(f)(2)(A)–(C) and (3), and the contents requirements under R.C.M. 1210(c), we hold that the petitioner has not demonstrated that he is entitled to relief under Article 73, UCMJ.

## VII. Conclusions

We have considered the appellant's remaining assignments of error and *Grostefon* matters and determined that they lack merit. We also find that the sentence is appropriate.

The findings of guilty of Additional Charge I and its Specification (assault with the intent to commit rape) and Additional Charge II and its Specification (felony murder) are set aside and Additional Charge I and its Specification and Additional Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record of trial, and applying the criteria of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the sentence is affirmed.

The Petition for New Trial is denied.

Chief Judge COOKE and Senior Judge EDWARDS concur.

---

8. The petitioner does not take issue with the location of the questioned university being in the country of "Bangladesh." We note that "Calcutta" is a city located in India and that "Dacca" is the capital of Bangladesh.