# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DOUGLAS W. KNIGHTON**
**United States Army, Appellant**

ARMY 20180106

U.S. Army Maneuver Support Center of Excellence
J. Harper Cook, Military Judge
Colonel John T. Rothwell, Staff Judge Advocate

For Appellant: Frank J. Spinner, Esquire (on brief); Major Steven J. Dray, JA; Frank J. Spinner, Esquire (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Marc J. Emond, JA (on brief).

15 April 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

On appeal, appellant asserts the military judge abused his discretion in finding the trial counsel's prior representation of appellant for legal assistance matters did not disqualify the trial counsel from participating in appellant's court-martial. Appellant also claims his trial defense counsel were ineffective for failing to challenge the trial counsel's participation in the trial based on this asserted conflict of interest. Further, appellant claims his conviction for attempted rape is legally and factually insufficient.[1] We disagree and affirm the findings and sentence.[2]

---

[1] Appellant raises a fourth issue, which alleges unreasonable multiplication of charges. Appellant inappropriately labeled this issue as both an assigned error and as a matter raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Issues raised on appeal to this court should be clearly

(continued . . .)

## BACKGROUND

### *Misconduct*

The background of appellant's misconduct relevant to his assigned errors is as follows. Between 2013 and 2016, appellant married three times. He assaulted two of his wives multiple times, SK and Staff Sergeant (SSG) DK, and assaulted and attempted to rape his girlfriend, CD.

At trial, CD testified regarding the attempted rape. CD testified that she confronted appellant regarding him cheating on her. An argument ensued and appellant grabbed CD by the back of her head and slammed her onto the bed, with her face to the side. Appellant held her down with his left arm and tried to take off her pants with his right arm. CD tried to fight appellant to keep him from pulling her pants back down, but she couldn't move. CD pleaded with appellant to stop. In response, appellant stated that he "owned [her] and that he could do anything that he want [sic] with her." Appellant pulled CD's pants to her knees and then saw menstrual blood between her legs. Appellant called CD "disgusting," and stated "no one would ever want to touch [her]."

---

(. . . continued)
identified as either an assigned error or a matter raised personally by an appellant pursuant to *Grostefon*. In appellant's case, we considered this fourth issue as an assigned error and find it merits neither discussion nor relief.

[2] A military judge sitting as a general-court-martial convicted appellant, contrary to his pleas, of one specification of attempted rape, one specification of willful disobedience of a superior commissioned officer, two specifications of making a false official statement, one specification of larceny of military property greater than $500, one specification of aggravated assault, five specifications of assault consummated by a battery, and one specification of impersonating a noncommissioned officer, in violation of Articles 80, 90, 121, 128, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 880, 890, 921, 928, and 934. The military judge sentenced appellant to a dishonorable discharge, confinement for 140 months, and reduction to E-1. After a post-trial Article 39(a) session, the convening authority approved the adjudged sentence.

We note the military judge granted appellant 10 days of confinement credit pursuant to Article 13, UCMJ, which the convening authority's action failed to reflect. So far as appellant has not already received such credit, he shall be credited 10 days against his sentence to confinement. *See* Army Reg. 27-10, Legal Services: Military Justice, para. 5-32.a (11 May 2016); *United States v. Arab*, 55 M.J. 508, 510 n.2 (Army Ct. Crim. App. 2001).

Appellant testified for the limited purpose of the attempted rape charge. He acknowledged that he and CD had an argument in the bedroom but only admitted to putting his arm out to get distance from her. Appellant denied grabbing CD by the neck, pushing her onto the bed and doing anything to attempt to have sex with her. He testified that he immediately broke away from the argument and left the house to stay at a friend's place.

*Appellant's Request for a Post-Trial Article 39(a) Hearing*

Appellant's post-trial defense counsel submitted a memorandum to the convening authority requesting a post-trial Article 39(a) hearing to inquire into whether the trial counsel, Captain (CPT) MD, was disqualified from participating in appellant's court-martial due to appellant's previous interaction with CPT MD in a legal assistance matter.[3] In support of this request, appellant submitted an affidavit stating:

> Shortly after arriving at Fort Leonard Wood in May 2015, my then-wife, [SK], filed an IG [sic] against me alleging adultery. My command initiated a 15-6 investigation into the matter and I sought legal advice from the Fort Leonard Wood legal assistance office. It was then I met with CPT [MD] whereby I told him several discreet facts about how my relationship with [SK] was physical in nature. [Captain MD] and I met/spoke several more times during the investigation.

Appellant's affidavit also claims he received ineffective assistance of counsel. In relevant part, appellant states in his affidavit:

> Right after the [Article 32 preliminary hearing] and several times leading up to and during trial, I mentioned to my civilian defense counsel, [Mr. JP], there might be a conflict of interest with CPT [MD]. We always resolved to discuss it in more detail but never did. I do not think Mr. [JP] knew I met with CPT [MD] on multiple occasions or knew exactly what I discussed with him before or during my trial. He just knew I had met with CPT [MD] on at least one occasion prior to charges being preferred.

---

[3] At different stages throughout appellant's court-martial, appellant was represented by CPT WW, CPT DB, CPT MK, Mr. RP, and MR. JP. During the merits and sentencing proceedings, appellant was represented by Mr. JP, Mr. RP, and CPT MK. Appellant retained new defense counsel for the post-trial proceedings.

The convening authority granted appellant's request for a post-trial Article 39(a) hearing and directed the military judge to "consider legal error raised by [appellant's counsel] in his memorandum and [appellant's] affidavit . . . ." At the post-trial hearing, appellant moved to set aside the findings of guilty and requested a rehearing.

*Post-Trial Article 39(a) Hearing*

Captain MD testified at the post-trial Article 39(a) hearing. Prior to his position as a trial counsel, CPT MD was a legal assistance attorney at Fort Leonard Wood from May 2015 through May 2016, where he saw approximately 750 clients. The Fort Leonard Wood Legal Assistance Office maintained a client card documenting appellant's visits. According to the client card, appellant met with CPT MD on two occasions. Captain MD did not dispute that he met with appellant, but testified that he had no independent recollection of the meetings. He further testified that the first time he was presented with the possibility that he had represented appellant was shortly after the civilian defense counsel submitted appellant's affidavit as part of his clemency matters – about four months after the trial. Appellant did not testify at the post-trial hearing.[4]

*First Legal Assistance Meeting*

Appellant's client card contains a remarks section with contemporaneous notes regarding his visit. For appellant's first visit with CPT MD, the remarks section of the client card states the reason for appellant's visit was for advice regarding "Divorce/ Spousal Support." Beyond the information on the client card, neither CPT MD nor appellant provided any details of what was discussed during this first meeting.

Appellant's former company commander, CPT Morgan, testified that around the time of appellant's first legal assistance meeting with CPT MD, SK called CPT Morgan "many times" to complain of appellant's missed child support payments. Captain Morgan also testified that SK stated that she and appellant were going through a divorce and that appellant was "dragging out the process." Three days prior to appellant's first visit with CPT MD, SK filed a formal non-support complaint with the Department of the Army Inspector General [DAIG].

Captain Morgan testified that he advised appellant to provide SK support in accordance with Army Regulation 608-99, Family Support, Child Custody, and

---

[4] At the initial post-trial hearing, defense counsel expressed a concern about appellant's ability to testify during the hearing without immunity. At the subsequent post-trial hearing, appellant's counsel confirmed they would not be seeking immunity for appellant.

Paternity (29 Oct. 2003) [AR 608-99]. Based on the aforementioned evidence, the military judge found that appellant's first meeting with CPT MD was to seek legal advice regarding this non-support issue. The military judge further concluded that he could not find by a preponderance of the evidence that appellant told CPT MD "several discreet facts about how [his] relationship with [SK] was physical in nature," as appellant claims in his affidavit.

### Second Legal Assistance Meeting

According to the client card, appellant's second legal assistance meeting with CPT MD was to discuss a "commander's inquiry." The client card indicates that CPT MD referred appellant to another attorney because the subject matter was outside the scope of legal assistance. Beyond the information on the client card, neither CPT MD nor appellant provided specific details of what was discussed during this second meeting.

Captain Morgan testified that around the time of appellant's second legal assistance meeting, SK reported to him that she suspected appellant was committing adultery with CD. As a result, CPT Morgan appointed his executive officer, First Lieutenant (1LT) Penado, to conduct a commander's inquiry into the allegation. Captain Morgan testified that this occurred after the DAIG investigation, but prior to Christmas 2015. Both 1LT Penado and CPT Morgan stated that they were unaware of any allegations of violence. Based on this evidence, the military judge found that appellant's second meeting with CPT MD, which occurred in early December 2015, was to seek legal assistance during the commander's inquiry.[5] The military judge also concluded that he could not find by a preponderance of the evidence that appellant told CPT MD "several discreet facts about how [his] relationship with [SK] was physical in nature," as appellant claims in his affidavit.

### The Military Judge's Ruling

In regards to appellant's claim that CPT MD was disqualified from acting as trial counsel in appellant's case, the military judge held that the defense failed to meet its burden. Specifically, the military judge applied "the substantial relationship test" set forth in *United States v. Rushatz*, 31 M.J. 450, 454 (C.M.A. 1990), and the confidential information test set forth in *United States v. Humpherys*, 57 M.J. 83, 87 (C.A.A.F. 2002). Under the substantial relationship test, the military judge held that the defense failed to show that the subject matter of appellant's visits with CPT MD in legal assistance related to the charged offenses in his court-martial. Further the military judge found that even if the subject matter did relate, the

---

[5] Although the written findings of the commander's inquiry could not be found, 1LT Penado submitted an affidavit stating "[t]here was insufficient evidence to prove that [appellant] had committed adultery."

defense failed to show that CPT MD used that information against appellant in the court-martial.

Under the confidential information test, the military judge found that the defense failed to show "[a]ny specific confidences related during [CPT MD's] prior representation."

The military judge's ruling also addressed appellant's claim that he received ineffective assistance from defense counsel for failing to challenge CPT MD at trial. The military judge applied the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 698 (1984), and found appellant failed to meet the first prong that his defense counsel's actions were deficient.

*Defense Counsels' Affidavits*

This court ordered all five of appellant's defense counsel, who represented appellant at different stages of trial, to provide affidavits stating whether or not appellant informed them that appellant had met with CPT MD in legal assistance, and if so, to explain why they did not challenge CPT MD at trial. Captains WW, DB, and MK each stated that appellant never informed them that CPT MD acted as his legal assistance attorney. Mr. JP stated that appellant mentioned CPT MD to him during dinner prior to trial:

> At that dinner, [appellant] mentioned that CPT [MD] had been in the legal assistance office when he had gone in for assistance. [Mr. RP] and I began to ask him questions about the relationship with CPT [MD]. We were concerned that this may be an area that needed to be addressed. [Appellant] explained that he had gone through the sign in process, and logistically walked us through what he did. [Appellant] talked about how the office worked and spoke of it as a single time that he had gone to the office . . . . [B]oth Mr. [RP] and I asked questions about the relationship between appellant and CPT [MD]. We asked about the nature of their conversations and I gathered that there was not an attorney client relationship that was established between [appellant] and CPT [MD]. From what [appellant] said, I also did not believe that there was any confidential or useful information that CPT [MD] had about the case. [Mr. RP] and I openly talked about this with [appellant]. At the time, I believed that [appellant] agreed with us. From [appellant's] conversations, I did not believe that he had been in their office more than one time and that the relationship, if any, was logistical and not confidential. I

did not believe that I needed to investigate further based
on [appellant's] representation at the time.

Mr. RP's affidavit provides a similar background as Mr. JP's affidavit and further details that the aforementioned conversation with appellant occurred "a day or two prior to trial." Mr. RP stated, "[w]e determined that it was a perfunctory interaction, and that it did not rise to the level of client/attorney relationship, and no confidential relationship formed, nor any confidential information passed between them."

## LAW AND DISCUSSION

### A. Disqualification of Trial Counsel

Appellant contends the military judge abused his discretion in finding CPT MD was not disqualified from participating in appellant's court-martial. Appellant states, "[The military judge] got 95 percent of the facts and law correct. It is his conclusion that was wrong." Appellant specifically challenges that the military judge repeatedly found CPT MD's testimony was "'credible' even though [CPT MD] repeatedly displayed a lack of memory." Appellant argues CPT MD's forgetfulness was "simply self-serving." Appellant further avers "[the military judge] minimized the nature of the conflict and inferred, without evidence, that the scope and depth of communications between [appellant] and [CPT MD] did not go beyond a superficial conversation solely related to providing financial support and adultery."

We review a military judge's ruling on a motion to disqualify counsel for an abuse of discretion. *United States v. Strother*, 60 M.J. 476, 478 (C.A.A.F. 2005). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Kelly*, 72 M.J. 237, 242 (C.A.A.F. 2013) (citing *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (further citations omitted).

The Court of Appeals for the Armed Forces (CAAF) has held that there are two tests for determining whether an attorney's prior representation of a client disqualifies him from acting as a prosecutor in a case. *See United States v. Humpherys*, 57 M.J. at 87. The first test is the "substantial relationship test," which provides that "[a]n attorney may be disqualified if the current representation is adverse to a former client, and the prior representation of that client involved the same or a substantially related matter." *Id.* (citing *United States v. Green*, 5 U.S.C.M.A. 610, 18 C.M.R. 234 (1955)). The second test is the "confidential information test," which provides that "[a]n attorney may be disqualified if there is a reasonable probability that specific confidences from the prior representation may be

used to the disadvantage of the former client." *Id.* (citing *Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 509 (S.D. Tex. 1996)).[6]

### 1. The Substantial Relationship Test

Under the substantial relationship test, appellant bears the burden of demonstrating: "(1) the former representation; (2) a substantial relation between the subject matter of the former representation and the issues in the later action; and (3) the later adverse employment." *United States v. Rushatz*, 31 M.J. at 454 (citations omitted). "Appellant must delineate 'with specificity the subject matters, issues and causes of action' which the prior representation and the instant case have in common. *Humpherys*, 57 M.J. at 87 (citing *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. Tex. 1992)).

Applying the substantial relationship test to appellant's case, the critical question is whether CPT MD's prior representation of appellant in legal assistance was substantially related to the subject of his court-martial. The general nature of the charges in appellant's court-martial was physical abuse, sexual assault, and financial fraud. The military judge's findings of fact, which are not clearly erroneous, determined that appellant met with CPT MD regarding spousal support and an allegation that he committed adultery. Neither of these topics were the subject of appellant's court-martial. *See United States v. Golston*, 53 M.J. 61, 65 (C.A.A.F. 2000) (A trial counsel is disqualified when the prior representation of the accused concerns "the very same matter for which the accused was court-martialed.").

Additionally, CPT Morgan testified that there were no allegations of violence mentioned during his several conversations with SK, in the DAIG report, or in the findings of the commander's inquiry. We agree with the military judge that the defense failed to "delineate with specificity" the commonality between the subject matter with which CPT MD assisted appellant and the present case. *See United States v. Wheeler*, 56 M.J. 919, 925 (Army Ct. Crim App. 2002) (finding trial counsel's former representation of accused's wife in legal assistance with a separation agreement not substantially related to appellant's charges of adultery and violation of a lawful general regulation).

Despite not meeting the second prong of the substantial relationship test, we will consider the third prong, as the military judge did in his ruling. Neither during the post-trial hearing, nor on appeal, does appellant identify how CPT MD adversely

---

[6] The American Bar Association Model Rule of Professional Conduct, Rule 1.9 (2019 ed.), and Army Regulation 27-26, Rules of Professional Conduct for Lawyers, Rule 1.9 (28 Jun. 18), both adopt the substantial relationship test and confidential information test for determining when an attorney is disqualified.

employed information he received during his representation of appellant. The military judge found that the criminal investigation that eventually led to appellant's court-martial was directed by the U.S. Army Criminal Investigation Command (CID). This is clearly supported by the evidence for several reasons.

First, the criminal investigation into appellant's misconduct was directed by CID. Approximately nine months after CPT MD's second and last meeting with appellant, CPT MD, as a trial counsel received information from CID related to appellant's case. Second, according to the Agent's Investigation Report, CID began investigating appellant in response to SSG DK's report to her command that appellant sexually assaulted her. Third, CID discovered SK after following their own leads and conducting a "Department of Defense (DOD) Persons Search" for appellant which revealed his former spouses.

Additionally, CPT MD testified that he did not use any information from his meetings with appellant in legal assistance during the prosecution of appellant's case, and had no recollection of having met appellant as a legal assistance attorney until this fact was brought up after trial.[7] The assistant trial counsel in appellant's court-martial, CPT RG, testified that she first learned that CPT MD met with appellant in legal assistance when she read appellant's post-trial affidavit to the convening authority. Captain RG stated that CPT MD did not provide any information from his former representation of appellant in legal assistance during the prosecution of appellant's case. The defense failed to demonstrate that CPT MD used any information obtained from his prior representation of appellant in legal assistance against appellant in his court-martial. Accordingly, the military judge did not abuse his discretion in finding the defense failed to meet its burden under the last two prongs of the substantial relationship test.

### 2. The Confidential Information Test

Next, we consider the confidential information test. This test considers whether the client can establish "that confidential information told to a lawyer during a former representation [was] used against the client in the case at hand." *Humpherys*, 57 M.J. at 87-88. The confidential information test does not require a substantial relationship between the subject matter of the former representation and the issues in the later action. *Id.* at 88 (citations omitted). Appellant bears the burden of demonstrating the specific confidences communicated to a lawyer and how

---

[7] The military judge found that CPT MD testified credibly. In our review under Article 66, we considered that the military judge had the benefit of observing and hearing the witnesses. However, the military judge's finding is merely a factor in our independent determination of credibility. With this recognition, we assess CPT MD to be credible. *See United States v. Feliciano*, 2016 CCA LEXIS 512, at *6-8 (Army Ct. Crim. App. 22 Aug. 2016).

they were used to disadvantage appellant. *Id.* "This level of proof is designed to avoid speculation about what communications may have occurred during the existence of the prior relationship and how such communications might [have been used] in the instant case." *Id.*

Here, appellant asserts in his affidavit that he communicated "[s]everal discreet facts [to CPT MD] about how my relationship with [SK] was physical in nature. [Captain MD] and I met/spoke several more times during the investigation." The military judge found appellant's assertion to be "vague" and "uncorroborated." This finding is supported by the evidence for several reasons.

First, appellant's assertion does not makes sense in the context of the two visits. Appellant's first visit with CPT MD was for advice regarding child support and divorce. Without more specific details, the evidence does not establish that appellant discussed the "physical nature" of his relationship with SK. Second, appellant's second visit with CPT MD was for advice regarding a commander's inquiry into SK's adultery allegation. Again, without more specific details, the evidence does not establish that appellant discussed the "physical nature" of his relationship with SK. *See Humpherys*, 57 M.J. at 88 (Defendants bear the heavy burden of proving facts required for disqualification which is "[d]esigned to avoid speculation about what communications may have occurred during the existence of the prior relationship and how such communications might [have been] used in the instant case.").

Additionally, appellant undermines the credibility of the assertions in his affidavit when he claims that "[Captain MD] and I met/spoke several more times during the investigation." No evidence was presented to support this statement. Appellant's client card indicates appellant visited the Fort Leonard Wood Legal Assistance Office on two additional occasions, but was seen by an attorney other than CPT MD. Appellant failed to demonstrate a specific confidence was communicated to CPT MD and how it was used to disadvantage appellant.

Under these circumstances, the military judge applied the correct law and his findings of fact are not clearly erroneous. As such, we conclude the military judge did not abuse his discretion in denying the disqualification motion under either the substantial relationship test or the confidential information test.

*B. Ineffective Assistance of Counsel*

Turning to appellant's claim he received ineffective assistance of counsel, we review such claims *de novo*. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). The test for ineffective assistance of counsel requires an appellant prove both (1) that his counsel's performance was deficient, and (2) that the deficiency resulted in

prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. at 687).

Under the first *Strickland* prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. To decide this issue, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The presumption of competence is rebutted by "a showing of specific errors made by defense counsel" that were "unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citations omitted).

Under the second *Strickland* prong, appellant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Appellant contends his counsel were deficient for not challenging CPT MD based on appellant's vague statement to Mr. JP that "[I] met with [CPT MD] on at least one occasion prior to charges being preferred." According to appellant's affidavit, this is the only information he provided to his defense counsel. Appellant concedes, "I do not think Mr. [JP] knew I met with CPT [MD] on multiple occasions or knew exactly what I discussed with him before or during my trial." This is consistent with Mr. JP's and Mr. RP's affidavits which both state they discussed the issue with appellant over dinner. Based on appellant's representations during this dinner conversation, Mr. JP and Mr. RP concluded that appellant's relationship with CPT MD was "logistical and not confidential." Appellant did not relate that "any confidential information passed between [him and CPT MD]. As such, Mr. JP and Mr. RP concluded that appellant's meeting with CPT MD was a "perfunctory interaction." Appellant's defense counsels' decision not to challenge CPT MD did not fall below an objective standard of reasonableness considering the unspecific and ambiguous information provided by appellant.[8] *See, e.g., United States v. Key*,

---

[8] We note appellant also submitted "declarations" from Ms. Stone, who has known appellant "for several years," and Ms. Fuller-Ray, appellant's mother. Both Ms. Stone and Ms. Fuller-Ray claim to have been present during phone conversations between appellant and Mr. JP where they heard appellant inform Mr. JP that there was a "conflict of interest involving CPT MD." Ms. Stone and Ms. Fuller-Ray claim they discussed CPT MD's legal advice to appellant regarding allegations of a government witness. To the extent the affidavits submitted in this case conflict regarding what information appellant shared with his counsel and when, we find a post-trial evidentiary hearing is unnecessary. Applying the principles set forth in

(continued . . .)

57 M.J. 246, 249 (C.A.A.F. 2002) (finding appellant's assertion "too equivocal and ambiguous to overcome the presumption that his counsel were competent").

However, even assuming appellant's defense counsel were deficient for not challenging CPT MD, appellant has not established prejudice. Appellant has not identified specifically how CPT MD's participation in the court-martial prejudiced him. In his brief, appellant states, "[o]n the substantive issue of prejudice, [appellant] relies on the same arguments presented under the first assigned error." Looking back at the first assigned error, appellant focuses on CPT MD's credibility and that he "should have at least recognized [appellant] by his appearance." The overall sentiment of appellant's argument is that CPT MD's prior attorney-client relationship with appellant "raises serious questions about how the public would perceive the fairness of the military justice system." Appellant's arguments fall far short of demonstrating a reasonable probability that, but for counsel's alleged deficiency, the result of the proceeding would have been different.

Additionally, even if appellant's counsel made the motion at trial, and the military judge granted the motion, we are not convinced that the outcome of the trial would have been any different. There is no evidence that CPT MD learned information from his representation of appellant in legal assistance that was used at trial. The topics of their legal assistance meetings focused on family support, divorce, and a commander's inquiry into adultery for which appellant was referred to a different attorney. Those topics were not the subject of appellant's court-martial. Further, the evidence shows that appellant's misconduct came to light because of SSG DK's report and that CID led the investigation. We are confident that the result of appellant's court-martial would have been the same whether or not CPT MD was the prosecutor. Accordingly, we find appellant's claim of ineffective assistance of counsel lacks merit.

### C. Legal and Factual Sufficiency

We review questions of legal and factual sufficiency *de novo*. UCMJ art. 66(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for

---

(. . . continued)
*United States v. Ginn*, we find the first and second principles present in this case. 47 M.J. 236, 248 (C.A.A.F. 1997). Under the first principle, even if the facts alleged in appellant's, Ms. Stone's, and Ms. Fuller-Ray's affidavits are true, they do not allege an error that would result in relief. *See id.* As we discuss below, appellant fails to show how he was prejudiced by the alleged deficiency. Under the second principle, appellant's, Ms. Stone's, and Ms. Fuller-Ray's affidavits do not "set forth specific facts but consis[t] instead of speculative or conclusory observations." *See id.*

legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of appellant's guilt beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation omitted). We take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Wheeler*, 76 M.J. 564, 568 (quoting *Washington*, 57 M.J. at 399.

Appellant's conviction for attempted rape required the government to prove the following elements: (1) appellant did certain overt acts, to wit: hold CD's face down on the bed and pulled her pants and underwear down; (2) the acts were done with the specific intent to commit the offense of rape; (3) the acts amounted to more than mere preparation; and (4) the acts apparently tended to effect the commission of the offense. *See* UCMJ art. 80, *Manual for Courts-Martial* [*M.C.M.*], pt. IV, ¶4.b. That the offense of rape actually occurred or was completed is not required. However, the government must prove that, at the time of the overt acts, appellant intended every element of the offense of rape. The elements of rape by force are: (1) appellant caused CD to engage in a sexual act; and (2) appellant did so by using force against CD, to wit: holding CD's face down on the bed and pulling her pants and underwear down. *M.C.M.* (2012 & Supp. III 2016), pt. IV, ¶45.b.1(a)(i).

The focal point of appellant's argument is that the evidence does not demonstrate he had a specific intent to rape CD. Specifically, appellant argues that the contact CD described in her testimony is "[i]nsufficient as a matter of fact and law to support a conviction of attempted rape." Appellant also argues that "[t]he government produced no evidence that [appellant] exposed his penis or otherwise used or handled his penis in this interaction with [CD]." We disagree on all points.

Appellant's specific intent to rape CD can be inferred from the circumstances surrounding the offense. *See United States v. Acevedo*, 77 M.J. 185, 189 (C.A.A.F. 2018) (further citations omitted). First, appellant demonstrated his intent to use force when he grabbed CD by the back of her neck, slammed her to the bed, and held her down while CD pleaded with him to stop. Second, appellant demonstrated his intent to engage in a sexual act with CD when he pulled CD's pants to her knees,

despite her fighting back. Appellant's statement that he "owned [her] and that he could do anything that he want [sic] with her," further showed that he intended to violate her body.

Finally, the only reason appellant did not rape CD was because he saw menstrual blood between her legs. At that point, appellant called CD "disgusting," and stated "no one would ever want to touch [her]." We find the only reasonable inference of appellant's intent when he slammed her to the bed and pulled her pants to her knees as described above, was to use force to engage in sex with her. *See, e.g., United States v. Graves*, 47 M.J. 632 (Army Ct. Crim. App. 1997) (conviction for attempted rape sustained despite no physical evidence of sexual assault where accused had prepared prussic handcuffs on a bed in the room to which he had tried to take the victim after brutally assaulting and abducting her).

Appellant testified on this limited issue. His testimony corroborated CD's account that they had an argument which turned physical. Though appellant denied grabbing CD by the neck, pushing her onto the bed, and doing anything to attempt to have sex with her, "[t]he trier of fact may disbelieve the accused's testimony and then use the accused's statements as substantive evidence of guilt in connection with all the other circumstances of the case." *United States v. Nicola*, 78 MJ 223, 227 (C.A.A.F. 2019) (internal quotations and citations omitted). "[F]alse testimony, knowingly and purposely invoked by the defendant, may be used against him." *Id.* (internal quotations and citations omitted). Thus, the trier of fact could have believed that appellant was lying and then used his statements to find the opposite was true, thus bolstering CD's testimony. *See id.* at 227-28.

Examining the record for legal sufficiency, we are satisfied that the finder of fact, who weighed the evidence using his common sense and knowledge of human nature and the ways of the world, reasonably found beyond a reasonable doubt all of the essential elements of proof, including specific intent, for attempted rape. Having reviewed the record of proceedings, we are also convinced of appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Judge RODRIGUEZ and Judge FLEMING concur.

KNIGHTON—ARMY 20180106

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**

v.

**Staff Sergeant DOUGLAS W. KNIGHTON**
**United States Army, Appellant**

ARMY 20180106

---

### NOTICE OF COURT-MARTIAL ORDER CORRECTION

---

IT IS ORDERED THAT, to reflect the true proceedings at the trial of the above-captioned case,

GENERAL COURT-MARTIAL ORDER NUMBER 3, U.S. ARMY MANEUVER SUPPORT CENTER OF EXCELLENCE, FORT LEONARD WOOD, MISSOURI 65473, dated 13 February 2019,

IS CORRECTED AS FOLLOWS:

BY deleting in line one of Specification 2, Additional Charge II, the words "(Renumbered The Specification)."

BY reflecting the Finding in Specification 2, Additional Charge II, as "Guilty."

DATE: 15 April 2020

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court