UNITED STATES, Appellee,

v.

Private First Class Dennis H. SAMPSON, SSN 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, United States Army, Appellant.

CM 436811.

U. S. Army Court of Military Review.

20 March 1979.

kewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Demmon F. Canner, JAGC.

Major David McNeill, Jr., JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, and Captain Richard A. Kirby, JAGC.

Before DE FIORI, CARNE and THORNOCK, Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge, and THORNOCK, Judge:

This case is before the Court for mandatory review pursuant to Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866.

Private First Class Dennis H. Sampson was charged with burglary, attempted rape and indecent assault in violation of Articles 129, 80 and 134, UCMJ, 10 U.S.C. §§ 929, 880, 934, respectively. The charge of indecent assault was withdrawn by the Government after arraignment.[1] The court-martial with members found him guilty of all charges and sentenced him to a dishonorable discharge, confinement at hard labor for eight years, forfeiture of all pay and allowances, and reduction to the rank of Private (E–1). The convening authority approved only so much of the sentence as provides for a dishonorable discharge, confinement at hard labor for two years, forfeiture of all pay and allowances, and reduction to the rank of Private (E–1).

### I

First we consider whether the evidence is sufficient to prove beyond a reasonable doubt that the appellant committed an overt act tending toward the completion of rape which amounted to more than mere preparation; and whether that act was accompanied by the specific intent required for the offense of attempted rape. The

Captain David L. Holmes, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adam-

1. The reason for the withdrawal is not set forth in the record; presumably it was withdrawn on the theory that the attempted rape charge and the indecent assault charge were multiplicious for findings purposes.

appellant contends the evidence is insufficient to prove both elements.

a. *Operative Facts:*

The record shows that at approximately 0240 hours on 5 November 1977, the appellant entered the occupied quarters of 2LT and Mrs. "J" at Fort Bragg, North Carolina. Mrs. "J" testified that her husband was in the master bedroom reading a magazine, that she was in her bathroom and that she was nude. She had completed her shower and was leaning forward wringing out her hair when she heard the sound of the front storm door closing, footsteps on the creaking wooden floor tiles and their puppy barking in the hallway. When the bathroom door opened she looked up expecting to see her husband, but was shocked to see the right half of the nude body of the appellant. She looked directly at his face as he looked at her with a "leering smile." He leaned toward her reaching in the direction of her neck and shoulder with his right hand. She screamed and yelled for her husband as she thought the appellant was going to attack her. When she screamed, he continued standing there reaching for her until 2LT "J" responded from the master bedroom with a loud continuous yell. Then the appellant's facial expression became one of surprise, and he immediately turned and ran through the front door. Mrs. "J" testified that she saw the appellant for approximately 10 seconds and that 2LT "J" pursued the appellant closely and continued to yell. As the appellant ran, he also defecated, leaving a trail of fecal matter from the house to a point across the street where 2LT "J" tackled and subdued him.

In his testimony 2LT "J" described the actions of the appellant as follows: When tackled, the appellant fought back; when asked "Who do you think you are?", the appellant responded with, "This big black guy made me do it, this big black guy made me do it" "He made me take these drugs, he made me do it, this big black guy made me do it"; the appellant's speech was understandable, very clear and unslurred.

2LT "J" testified that he yelled for a neighbor's help, and someone called the military police. Several moments later the appellant stated "I'm going to swallow my tongue" and made sounds as if he were choking. As the lieutenant attempted to clear the appellant's breathing passage, the appellant bit him. Thereafter, the appellant was allowed to stand to get some air and at that point the appellant stopped making the gutteral sound, looked at the lieutenant and his neighbor, and started running away. 2LT "J" caught him again and held him until the military police came and apprehended him.

Immediately thereafter Mr. Edwards, a CID agent, conducted an investigation at the scene of the incident. A search was conducted for the black man the appellant had talked about but no trace of him could be found.

Later, behind their quarters, 2LT "J" and his wife discovered a pile of clothes, consisting of a blue garment and some black tennis shoes, and the screen from a window lying on the ground. He called the CID agent, who returned. When they entered the back bedroom, they saw that the screen had been removed, that the potted plant on the window sill appeared to have been moved and that there were small piles of sand leading from the window. Previously, this window had been left open to ventilate the room; however, the screen on the inside of the window had been left in place.

The defense presented the testimony of Dr. Goldberg, the physician who examined the appellant in the emergency room of Womack Army Hospital approximately two hours after the incident. Dr. Goldberg testified that during the appellant's stay in the emergency room, he seemed disoriented, emotional and panicky. The doctor said the appellant seemed unaware of who he was, where he was and who the doctor was. When medical personnel told the appellant he would be all right, he responded by saying "No, he's going to get me."

Dr. Goldberg's conclusions are summarized as follows: His findings concerning PFC Sampson were not inconsistent with

ingestion of alcohol, drugs and the possibility of sexual assault on Sampson. However, his findings were also not inconsistent with ingestion of alcohol and fear without any sexual assault. Neither conclusion was more probable than the other. There was no evidence of sexual assault. His best estimate was that appellant was not acting, but he could not say positively that he was not acting.

b. *Discussion of Evidence:*

■ We have carefully reviewed the record for: (1) proof beyond a reasonable doubt that the appellant committed an overt act tending toward the completion of rape, which amounted to more than mere preparation; and (2) proof beyond a reasonable doubt of the appellant's concurrent *specific intent* to commit rape as required for the offense of attempted rape.[2] While conducting our review of the evidence we were mindful that the law provides that:

> [T]he intention to commit the substantive crime [rape] alleged cannot be proven by the overt act alone . . . the specific intention to commit the substantive offense [rape] and the overt act must each be proven by the evidence, and proof of the overt act alone cannot be "boot strapped" up to prove also the specific intent required. . . .[3]

Although we find that there is sufficient evidence of an overt act *tending* toward the completion of rape, which amounts to more than mere preparation, we do not find sufficient proof beyond a reasonable doubt that the appellant had the specific intent required for the offense of attempted rape, *i. e.*, that the appellant intended to have sexual intercourse with a woman not his wife by force and without her consent where he intended to overcome any resistance by force, active or constructive, and to penetrate the woman's person.[4]

Our first observation is that, as in most instances where specific intent is at issue, there was no declaration by the appellant indicating an intent to commit rape. The evidence that can be used to prove the specific intent element of the attempted rape charge in this case is primarily circumstantial and must be carefully evaluated to insure that inferences from that evidence which tend to prove this element of this offense are such that the element was proven beyond a reasonable doubt. From the evidence of record, we perceive that the appellant had a generalized evil desire for gratification. However, as in *United States v. Polk*, 48 C.M.R. 993 (A.F.C.M.R.1974), this generalized evil desire is not sufficient to establish the specific intent required to prove an attempted rape. Secondly, in our opinion the evidence fails to present a clear-cut indication of the appellant's objective. Accordingly, in our view the evidence is as consistent with a scenario of indecent assault and exhibitionism as it is with a scenario of rape. It is also possible that the appellant sought some other sexual gratification from Mrs. "J". Additionally, the appellant essentially stood in one position throughout the brief confrontation with Mrs. "J". This evidence may be interpreted to show reluctance to use force. If the evidence is not sufficient to prove beyond a reasonable doubt that the accused ever formed an intention to overcome whatever resistance he might meet, he cannot be convicted of attempted rape.[5] Since there is no clear-cut indication that he intended to overcome Mrs. "J" and rape her, we cannot conclude beyond a reasonable doubt that the appellant is guilty of attempted rape.

However, we find that there is sufficient evidence to prove beyond a reasonable doubt that the appellant committed the lesser included offense of indecent assault.

**2.** *United States v. Hobbs*, 7 U.S.C.M.A. 693, 23 C.M.R. 157 (1957).

**3.** *United States v. Polk*, 48 C.M.R. 993, 996 (A.F.C.M.R.1974); *see also United States v. Wright*, 35 C.M.R. 546, 551 (A.B.R.1964), *pet. denied*, 35 C.M.R. 478 (1965).

**4.** *United States v. Polk, supra* note 3, at 997.

**5.** *United States v. Smith*, 25 C.M.R. 755 (C.G.B.R.1957).

## II

Next we consider whether the evidence is sufficient to prove beyond a reasonable doubt the specific intent element of the burglary offense.

■ To sustain the burglary offense as alleged requires proof beyond a reasonable doubt that the appellant's breaking and entering was done with the intent to commit the offense of rape therein. Since we have concluded that the evidence is not sufficient to prove beyond a reasonable doubt that the appellant had the specific intent to commit the offense of attempted rape, it follows that the evidence required to prove the specific intent element of the burglary offense is lacking. However, we find that the evidence is sufficient to prove beyond a reasonable doubt that PFC Sampson's breaking and entering was done with the intent to commit an indecent assault, as well as the other elements of the offense of burglary.[6]

## III

The next issue concerns whether the military judge erred to the substantial prejudice of the accused by not instructing the members of the court-martial on voluntary intoxication.

■ Based on the appellant's behavior at the scene of the crime, including his agility, clarity of speech, and demonstrated ability to fight and escape from his captor, we conclude that he was clearly in control of himself, that he knew exactly what he was doing, and that his ability to form and carry out a specific intent was not impaired. Furthermore there was no direct evidence of the appellant's ingestion of alcohol or drugs and the medical testimony on this point was nonconclusive. We also conclude that there was no competent evidence of

involuntary intoxication, and we concur with the military judge's conclusion that the evidence was not sufficient to warrant an instruction on voluntary intoxication.[7]

## IV

■ The last issue to be discussed is whether the military judge erred in submitting written instructions to the court members *only* on the elements of the offenses and lesser included offenses, over defense objection and after he had given *all* of his instructions orally.

Appellant asserts that he was prejudiced by the military judge's action because it overemphasized matters of criminality and underemphasized the presumption of innocence, the concept of reasonable doubt and the fact that the Government has burden of proof.

■ Submission of written instructions after oral instructions have been given is a matter entirely within the discretion of the military judge, provided he does so in open court and has the writing properly marked as an exhibit and attached to the record of trial, first giving counsel an opportunity to examine and object to the same.[8] The record shows that the military judge complied with this requirement. The record also shows that: the military judge instructed the court members on the presumption of innocence on two separate occasions, once before evidence was received during preliminary instructions and again during instructions before findings; he mentioned three times that the Government had the burden of proof; during instructions before findings, he gave a detailed and complete instruction on the meaning of "beyond a reasonable doubt," and informed the members at least six times that the Government's proof had to be beyond a reasonable doubt.

---

6. *United States v. Kluttz,* 9 U.S.C.M.A. 20, 25 C.M.R. 282 (1958); *United States v. Polk, supra* note 3, at 998.

7. Both *United States v. Craig,* 2 U.S.C.M.A. 650, 10 C.M.R. 148 (1953), and *United States v. Backley,* 2 U.S.C.M.A. 496, 9 C.M.R. 126 (1953), provide that an instruction on voluntary intoxication shall be given if there is evidence

on the record from which a reasonable man could conclude that the degree of intoxication is such that it would impair the capacity of the accused to form a specific intent.

8. *United States v. Sanders,* 30 C.M.R. 521, 524 (A.B.R.1961).

Our view is that the military judge gave fair emphasis to the elements of the charged offenses, the presumption of innocence, the Government's burden of proof and the meaning of "beyond a reasonable doubt." Accordingly, we find no error in the military judge's actions.

We have carefully considered the remaining assignments of error and find none that materially prejudiced the appellant's substantial rights.

For the reasons stated, only so much of the findings of guilty of the Specification of Charge I and Charge I as finds that the appellant did, at the time and place alleged, burglariously break and enter the dwelling house alleged, in the nighttime, with the intent to commit therein the criminal offense of indecent assault, in violation of Article 129, Uniform Code of Military Justice (UCMJ), is affirmed.

Only so much of the findings of guilty of the Specification of Charge II and Charge II as finds that at the time and place alleged, the appellant committed an indecent assault upon the named victim, by entering her bathroom while he was nude and reaching in the direction of her neck and shoulder as she stood nude, with the intent to gratify his lust and sexual desires, in violation of Article 134, UCMJ, is affirmed.

Reassessing the sentence on the basis of the errors noted and the entire record, the Court affirms the sentence.

DE FIORI, Chief Judge, concurring in part and dissenting in part:

Appellant stripped himself nude outside the victim's home, broke in through a window, anticipated the need for a speedy retreat, prepared an alternate means of escape for himself, ignored the barking of the victim's dog, entered her bathroom, confronted her while nude as she left the shower, leered at her, leaned toward her with his arm outstretched, reached for her head and shoulder area, continued to reach for her

despite her screams, was surprised by the sound of her husband's voice, and fled only when her husband came to her aid. These facts have led the majority to the conclusion that appellant intended to perpetrate a nonconsensual sex crime. Although they are not convinced that appellant intended the offense in question to be rape, I am convinced beyond a reasonable doubt that he intended to overcome any resistance and to have sexual intercourse with this victim against her will.

I do not believe that appellant planned and executed such a risky endeavor as he did for any purpose short of rape. His total disrobement before confronting the victim was unnecessary to an indecent assault or a lesser offense but would have facilitated considerably the perpetration of a rape, especially when the need for speedy completion of the act was envisioned. Additionally, appellant's act of reaching for the victim's head and shoulder area with a grasping motion of his hand is the type of gesture used by a rapist to gain control of the victim's person and would have been unnecessary under the circumstances of this case to the completion of a lesser offense. Nor can it be said that appellant did not intend to overcome his victim's resistance, for when she offered the only form of resistance available to her under the circumstances (a scream), appellant persisted in reaching for her. Appellant thus overcame her initial manifestation of resistance and demonstrated his intent to overcome other resistance she might have offered. Once the victim screamed, appellant must certainly have realized that she was in fear. By continuing to reach for her while offering no reassurance that he did not intend to harm or rape her,[1] appellant confirmed that those fears were well-founded. While proof of an overt act cannot be substituted for proof of intent in an attempt case, it has been recognized that in most attempted rape cases the accused's intent is manifested by an assault,[2] i. e., by his conduct. In

1. Cf., United States v. Polk, 48 C.M.R. 993 (A.F.C.M.R.1974).

2. United States v. Hobbs, 7 U.S.C.M.A. 693, 703, 23 C.M.R. 157, 167 (1957) (Ferguson, J., dissenting).

sum, except for making an oral declaration of his intent, appellant did everything that a would-be rapist could have done under the circumstances to demonstrate his intent.

Consequently, while I join in Parts III and IV of the majority opinion, I am unable to concur in Parts I and II. I would affirm the findings of guilty as approved by the convening authority.