UNITED STATES, Appellee,

v.

Private First Class Ismael GONZALEZ–
RODRIGUEZ, SSN 074–42–0007, Unit-
ed States Army, Appellant.

CM 437374.

U. S. Army Court of Military Review.

19 April 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Larry D. Anderson, JAGC, and Captain Raoul L. Carroll, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R.R. Boller, JAGC, Major Robert B. Williams, JAGC, and Captain Harry J. Gruchala, JAGC, were on the pleadings for appellee.

Before FULTON, TALIAFERRO and WATKINS, Appellate Military Judges.

OPINION OF THE COURT

FULTON, Senior Judge:

Although pleading not guilty, the appellant has been convicted of wrongfully possessing an unspecified quantity of "a habit forming narcotic drug, to wit: Cocaine," in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976), and an additional charge of attempting (at the same time and place) to sell the drug in violation of Article 80, UCMJ, 10 U.S.C.

§ 880 (1976).[1] His approved sentence includes a bad-conduct discharge and confinement at hard labor for two years, thereby requiring our review pursuant to Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866 (1976).

The appellant attacks his conviction for the attempt to sell, because, he asserts, his acts amounted at most to mere preparation and did not constitute an attempt.

Article 80 of the Uniform Code of Military Justice, *supra* (proscribing attempts to violate other articles of the Code), provides in part as follows:

(a) An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

By way of elaboration, paragraph 159 of the Manual for Courts-Martial, United States, 1969 (Revised edition), states—

To constitute an attempt there must be a specific intent to commit the particular offense accompanied by an overt act which directly tends to accomplish the unlawful purpose. The overt act must be more than mere preparation to commit the offense. Preparation consists of devising or arranging the means or measures necessary for commission of the offense. The overt act required goes beyond preparatory steps and is a direct movement towards commission of the offense. However, the overt act need not be the last proximate act to the consummation of the offense attempted to be perpetrated. . . .

*See United States v. Reid,* 12 U.S.C.M.A. 497, 504, 31 C.M.R. 83, 90 (1961), and cases there cited.

The record of trial establishes that Sergeant Nelms, working as an informant for the Army Criminal Investigation Detachment at Fort Kobbe, Canal Zone, was approached by Specialist Four Collins who offered to introduce Nelms to someone who would sell cocaine to him. When Nelms expressed interest, Collins led Nelms to a parked automobile in which the appellant sat alone. Collins introduced the appellant as the man from whom Nelms could buy "coke." The appellant got out of the car and with Nelms walked towards the nearby unit area of Company B. The record does not indicate whether Collins accompanied them.

Nelms asked how much cocaine he could get. The appellant replied, "As much as you want." Nelms asked if he could get a "$100 plate." The appellant said, "Yes." Nelms asked when he could get the cocaine. The appellant replied, "Right here; right now," tapping his left front trouser pocket as if to signify the presence of cocaine.

Pretending that he needed to get the money from a friend who had just cashed a check, Nelms excused himself and telephoned a member of the drug suppression team whom he knew was at a nearby unit. Describing the appellant and his automobile, he informed the team member that he had arranged to buy cocaine from the appellant. Two members of the team then headed for the scene on foot.

Nelms rejoined the appellant who instructed him to go to the automobile and await his return. Nelms did so while the appellant went into Company B and received his mid-month pay. In about five minutes, the appellant returned, entered the automobile, and sat in the driver's seat, counting his pay. At this moment, the members of the drug suppression team arrived and apprehended the appellant. (They also made a sham apprehension of Nelms.) A search of the appellant revealed the presence of a small plastic pill bottle in his left front trouser pocket; the bottle contained cocaine. Some small pieces of aluminum foil, such as might be used to wrap the powdered cocaine, were found in the automobile.

---

1. There is no dispute that, under the facts of this case, the two charges are multiplicious and not separately punishable. *See United States v. Smith,* 1 M.J. 260 (C.M.A.1976); *United States v. Cruz,* 46 C.M.R. 891 (A.C.M.R.1972).

The appellant has given two accounts of his possession of the cocaine which, while differing in many respects, are similar in their high degree of improbability. In a sworn statement made the day following his apprehension, he said that a Panamanian known to him only as "Rosando" approached him in the unit parking area and offered to let him keep $250.00 if he would take the bottle and deliver it to a man who would come to his car and pay $500.00 for the bottle. The appellant conceded that he believed the contents to be cocaine. He also said that he would have gone through with the transaction if the man had arrived within a reasonable time and had he (the appellant) not been apprehended in the meantime.[2]

As the Court of Military Appeals observed in *United States v. Choat,* 7 U.S.C. M.A. 187, 191, 21 C.M.R. 313, 317 (1956)—

The crucial part of this issue is whether the overt acts of the accused transcend preparation and amount to an attempt. In other words, did the accused's conduct constitute a 'direct movement towards the commission of the crime.' . . . The line of demarcation between preparation and a direct movement toward the offense is not always clear. Primarily, the difference is one of fact, not of law.

Another court has noted that "the semantical distinction between preparation and attempt is one incapable of being formulated in a hard and fast rule." *United States v.*

*Noreikis,* 481 F.2d 1177, 1181 (7th Cir. 1973). The difficulty is evident from our own consideration of cases involving attempted drug dealings. *Compare United States v. Buchanan,* 49 C.M.R. 620 (A.C.M.R.1974), *with United States v. Quick,* 50 C.M.R. 112 (A.C.M.R.1975); *compare United States v. Goff,* 5 M.J. 817 (A.C.M.R.1978), *with United ed States v. Williams,* 4 M.J. 507 (A.C.M.R. 1977), *and United States v. Jackson,* 5 M.J. 765 (A.C.M.R.1978).

█ We are persuaded that the appellant's acts went beyond mere preparation and constituted direct movements towards the sale of cocaine.[3] He possessed the drug in question; Nelms was introduced to him as a prospective buyer; in reaching agreement with Nelms, appellant resolved significant details such as quantity, price, and the time and place of the sale; appellant waited for Nelms, who ostensibly had gone to obtain cash; and, when the buyer Nelms followed his instructions to go to the car, appellant joined him there still possessing the cocaine. What principally distinguishes this sequence of events from *Quick, Williams,* and *Jackson, supra* (all cases involving mere preparation), is the directness of these movements towards completion of the offense and the "nearness of the consummation of the offense intended." *United States v. Johnson,* 7 U.S.C.M.A. 488, 493, 22 C.M.R. 278, 283 (1957). The only thing remaining to be done to complete the sale was

2. At his trial, the appellant repudiated his earlier statement, saying that he was under extreme medication when he made it and had not read it before signing it. Instead, he testified, he was driving to Company B to receive his pay when Collins, with a Panamanian companion (evidently "Rosando"), hailed him and asked that he give the Panamanian a ride. He drove the man to B Company, where the man left after giving him a paper sack and asking him to give its contents to Collins when he (the appellant) next saw Collins. Because the sack was inconveniently large, appellant removed its contents (the pill bottle). Without looking at the bottle, he placed it in his pocket. Thereafter, Collins and Nelms, arrived on foot. The appellant conversed with Collins in Spanish, but did not, he testified, even talk to Nelms who evidently spoke only English. The appellant told Collins that the Panamanian had left something to be delivered to him. Collins seemed interested,

but, instead of taking the object, said to wait a minute and withdrew a short distance with Nelms. It was then that the drug suppression team arrived and apprehended appellant with the drug in his possession.

3. We do not agree, however, with the Government's view that culpability was signified by the appellant's counting of money and by his admission that he would have completed a transaction. So far as the record discloses, he was innocently counting the mid-month pay he had received moments before. His admission that he would have completed the transaction was made in a pretrial statement the truth of which we have questioned, and in any event referred to a transaction allegedly proposed by Rosando, not to the transaction with Sergeant Nelms.

for the drug and cash to change hands.[4] We do not mean to say that, if any of the above facts were missing, we would find only preparation; merely that the abundance and concert of overt acts in this case convinces us beyond any reasonable doubt.

■ An act does not constitute an attempt unless it is accompanied by the specific intent to complete the ultimate offense—in this case, the sale of cocaine. Article 80, UCMJ, supra; Manual for Courts-Martial, supra, par. 159. While the appellant has raised no issue in this regard, we deem it necessary to discuss a line of military cases that have stated that the existence of the intent may not be inferred from the overt act alone: United States v. Wright, 35 C.M.R. 546, 551 (A.B.R.1964); United States v. Polk, 48 C.M.R. 993, 996 (A.F.C.M.R.1974); and United States v. Sampson, 7 M.J. 513, 516 (A.C.M.R. No. 436811, 20 March 1979).

Unlike the situation in such cases as United States v. Facemier, 27 C.M.R. 915 (C.G.B.R.1958), we do not have before us a confession by which the appellant's intent was evidenced apart from his objective acts. Perhaps we should compartmentalize the appellant's conduct, analyzing each of his actions sequentially. Possessing a small quantity of cocaine does not alone manifest an intent to sell it. Each successive act, however, became increasingly indicative of an intent to sell and moved closer to exceeding the bounds of mere preparation. We could then focus on the final act (returning to the car, still in possession of cocaine, where the buyer was waiting as instructed), calling it the overt act, safe in the knowledge that we were not inferring intent from the overt act alone, but from the entire sequence of events. We cannot be sure, however, that this is not the bootstrapping condemned by our Air Force brothers in Polk and by another panel of this Court in Sampson. Therefore, we pause to examine in greater detail the source and meaning of the statement that intent may not be proved from the overt act alone.

Rare indeed is the case—and especially among those involving drug dealings—in which the intent is provable by other than the act or acts constituting the attempt. Sometimes, however, the specific intent is not sufficiently clear; the acts, that is, are equivocal. That is the problem addressed in Wright, Polk, and Sampson.

In Wright, it was a matter of pleading. The specification alleged that Wright attempted robbery by entering certain premises wearing a mask and carrying a pistol. The essential elements of robbery, to wit, stealing from or in the presence of a person and doing so with force, violence, or by putting the person in fear, were not alleged. In the course of holding the specification deficient because the distinguishing elements of robbery were not alleged, the Board of Review commented that, "while the rule that every sane man is presumed to intend the usual and probable consequences of his acts applies to attempts, the existence of the intent may not be inferred from the overt act alone." It seems to us that the Board merely was attempting to suggest that entering a place armed and masked

4. As support for his contention that his acts amounted to no more than mere preparation, appellant notes that no drugs were displayed and no money changed hands. The former is of no consequence since the drugs were asserted, by tapping the pocket, to be present and in fact were there. The lack of actual payment bespeaks merely a failure to complete the ultimate offense, which is characteristic of, and not fatal to, prosecution for attempt. Of more potential significance is the possibility that Nelms did not have the cash with which to make the purchase. The record does not indicate whether he had any money at all. Were we to assume that Nelms did not have the money, the appellant's situation would be somewhat analogous to that of an accused who has attempted to pick an empty pocket; he is guilty of an attempt despite the impossibility of theft. United States v. McDonald, 22 C.M.R. 660 (N.B.R.1956); United States v. Trout, 12 C.M.R. 785 (A.F.B.R.1953); cf. United States v. Davis, 6 M.J. 669 (A.C.M.R.1978). Perhaps it could be argued that appellant would then have abandoned the sale, but the abandonment would have come too late to preclude the preceding acts from amounting to an attempt. See United States v. Facemier, 27 C.M.R. 915 (C.G.B.R.1958); United States v. Jones, 13 C.M.R. 420 (A.B.R.1953).

would not alone be sufficient to indicate that the defendant was intent upon robbery as distinguished from larceny—a proposition with which we quite agree.

*Polk* and *Sampson* are similar cases involving alleged attempts to rape. The crime of rape involves only a general criminal intent, according to these cases, whereas an attempt to rape requires proof of a specific intent to penetrate by force and without the victim's consent.[5] In neither case did the "generalized evil desire for gratification" evidenced by the offender's conduct towards the victim "establish the specific intent required to prove an attempt to rape." *United States v. Sampson, supra,* 7 M.J. at 516; *United States v. Polk,* 48 C.M.R. at 996. In other words, the things that the assailant said and did did not exclude the reasonable possibility that he was attempting a lesser offense.

■ Finding no other modern cases of similar import, we propose to restate the rule in terms of its factual context: the greater the specificity of intent required for an attempt, the more unequivocal must be the acts alleged to constitute the attempt. In the present case, acknowledging the presence of a marketable quantity of cocaine to begin with, there is nothing the least bit equivocal about the series of acts that were leading inexorably to the completed sale only to be prevented, so the appellant thought, by the police. *Cf. United States v. Oviedo,* 525 F.2d 881 (5th Cir. 1976).

■ We hold the evidence sufficient to sustain the appellant's conviction of violating Article 80 by attempting to sell cocaine and, as was the trier of fact, we are convinced beyond a reasonable doubt that he did attempt to do so.

The appellant's three remaining assignments of error do not warrant extended discussion. Two of them relate to his contention that cocaine is not habit forming. Therefore, he asserts, he was improperly convicted of possessing and attempting to sell "a habit forming narcotic drug"—multiplicious violations of Articles 134 and 80 of the Uniform Code of Military Justice, as noted previously. Even if we reject that argument, he contends that, for the same reason, the maximum punishment is not that specified in the Table of Maximum Punishments for offenses relating to habit forming drugs,[6] but is instead a lesser punishment prescribed under other laws.

■ We hold that, for purposes of prosecution and punishment under the Uniform Code of Military Justice and the Manual for Courts-Martial, cocaine has not been improperly denominated a habit forming narcotic drug. *United States v. Zenor,* 1 M.J. 918 (N.C.M.R.1976), aff'd, 3 M.J. 186 (C.M.A.1977); *see* U.S. Dep't of Army, Army Regulation 600–50, Standards of Conduct for Department of the Army Personnel, par. 5–2a(7)(c) (20 October 1977); *cf. United States v. Solow,* 574 F.2d 1318 (5th Cir. 1978); *State v. Erickson,* 574 P.2d 1, 15–18 (Alaska 1978); 21 U.S.C. § 802(16) (1976).

■ Appellant's final assignment of error is that an Army crime laboratory chemist's report improperly was admitted in evidence as a business entry exception to the hearsay rule. In substance, the appellant asks us to "re-evaluate" *United States v. Evans,* 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972), and reach a contrary result. We decline the invitation. Not only is *Evans* a decision of a higher court, it is, we believe, correct.[7]

---

5. Perhaps the classic case involving a difference between the intent required for an attempt and that required for the completed offense is *United States v. Carroll,* 10 U.S.C.M.A. 16, 27 C.M.R. 90 (1958), in which the Court of Military Appeals noted that an attempt to murder requires a specific intent to kill, whereas the type of murder involved (felony-murder; shooting the victim in the leg while robbing him) did not require an intent to kill.

6. Manual for Courts-Martial, United States, 1969 (Rev. ed.), par. 127c at p. 25–15.

7. The question is again pending before the Court of Military Appeals. *United States v. Santiago-Rivera,* 3 M.J. 265 (C.M.A.1977) (order granting petition for review).

The findings of guilty and the sentence are affirmed.

Judge TALIAFERRO and Judge WAT-KINS concur.