# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

Before
**J.A. FISCHER, A.C. RUGH, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JEREMIAH M. LOEFFLER**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201500217**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 9 April 2015.
**Military Judge:** Col D.J. Daugherty, USMC.
**Convening Authority:** Commanding General, 1st Marine Aircraft Wing, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** Capt G.D. Boenecke, USMC.
**For Appellant:** Maj Benjamin Robles, USMC.
**For Appellee:** LT Robert Miller, JAGC, USN; Capt Matthew Harris, USMC.

**31 May 2016**

---------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

RUGH, Judge:

A panel of members with enlisted representation, sitting as a general court-martial convicted the appellant, contrary to his pleas, of aggravated sexual contact and assault consummated by a battery in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 928. The members sentenced the appellant to confinement for six months, reduction to pay grade E-1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The appellant now raises three assignments of error (AOE): (1) that the evidence was factually and legally insufficient to convict him of aggravated sexual contact; (2) that his trial defense counsel was ineffective; and (3) that the convening authority's action is incorrect. In addition, we specified the following issue: whether the military judge instructed the members incorrectly as to the specification under Charge II.

We find the record factually insufficient to support the conviction of aggravated sexual contact. As a result, the appellant's second and third AOE and the specified issue are rendered moot. Further, we find that the trial defense counsel was not ineffective. Accordingly, we will modify the findings and reassess the sentence below.

## BACKGROUND

On 6 April 2014 the appellant and his wife returned home to their residence on board Camp Kinser, Okinawa, Japan, after attending an off-base party for a friend. Upon returning, the appellant's wife told the intoxicated appellant that she was tired and planned to get ready for bed. The appellant, who had become increasingly agitated with his wife during the course of the evening, pushed her multiple times while she walked to the bathroom. Nervous in light of his erratic behavior, the appellant's wife changed clothes and prepared for bed in their spare bedroom, locking the door behind her. Anticipating that the appellant may try to forcibly enter the bedroom, she started a video recording on her phone, which captured audio but no video of the appellant's subsequent assault. A few minutes later, the appellant forced open the locked door using a screwdriver and began yelling profanities at his wife.

Over the next several minutes, the appellant angrily left and returned to the bedroom several times, culminating in an attack on his wife. About this, the appellant's wife testified:

Q: What . . . happened the last time he came in? How did that start?

A: . . . [H]e came in another time completely naked and tried to have sex [with] me. And, you know, just yelled like 2 inches from my face.

Q: Now, ma'am, when you say, "tried to have sex with me" what do you mean by that[?] How did you know he was trying to have sex with you?

A: He was trying to pull my underwear down, and I was trying to, you know, hold them up, and they ended up ripping. And he did pull my underwear off and was trying to, you know, get on top of me to have sex with me and I just – you know, I didn't want to have sex with him, obviously, after he had just choked me and had been yelling at me all night, and – so I was – you know, kicked him to try to get him off of me.
. . . .
Q: Where did he put his hands when he tried to pull your underwear down?

A: Yeah. He was trying to pull down from the sides, and I was trying to yank them back up.

. . . .

Q: . . . Were you doing anything to resist his advances while he was attempting to pull your underwear off?

A: Yeah. You know, I was trying to pull them back up and then once he did get them off of me, you know, I just tried to kick him as hard as I could in the groin.

. . . .

Q: Were you able to feel whether or not the accused had an erection?

A: I'm not sure.[1]

For these acts, the Government charged the appellant with attempted rape and, alternatively, aggravated sexual contact. The aggravated sexual contact specification charged the appellant with "touching [his wife's] waist and legs, by unlawful force, to wit: ripping off her panties."[2] At the conclusion of the Government's case, trial defense counsel made a motion under RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), arguing the Government failed to present evidence that the appellant touched his wife's waist or legs as was charged in the aggravated sexual contact specification.[3] The prosecutor responded:

> Your Honor, there has been evidence of that. You look at the underwear where the tears are [sic] would be circumstantial indication of where his hands were. It's obvious from her testimony that there would've been some sort of contact between his hands and her inner thigh and waist area given the nature of the struggle she described.
>
> . . .
>
> [I]n order to remove somebody's panties it's a fair inference from the testimony and from the – in order to do that and the mechanics of it he would have touched her waist and thighs . . . .[4]

In ruling on the defense's RCM 917 motion, the military judge found there was "no testimony that [the appellant] touched [his wife's] waist" and struck the words "waist and" from the specification.[5] The specification then read "touching her legs by unlawful

---

[1] Record at 156-57.

[2] Charge Sheet.

[3] Record at 290.

[4] Record at 290-91.

[5] *Id*. at 291.

force, to wit: ripping off her panties."[6]  Furthermore, the military judge expressly observed that the appellant's wife testified that the appellant touched her outer thighs—not her inner thighs—and instructed the members accordingly.

During closing argument, the prosecutor argued that the victim's underwear was "moved forcibly," that the appellant put his hands on his wife's thighs, and that "his intent is easily inferred from the testimony and evidence."[7]  He further argued on the appellant's intent:

> Now we don't have any testimony that indicates [the appellant] said ["]I want to have sex with you["] or ["]I'm going to rape you,["] but your common sense and your knowledge of the ways of the world should tell you that that's not how most of these things go.  Intent can be inferred from the circumstances, and these circumstances show you that the accused went in there after he had beaten up his wife, because he wanted to have sex with her.  And the testimony you've heard makes it fairly clear that this may have [sic] for his sexual gratification, but it was also a power move.[8]

Trial defense counsel did not object to or oppose the prosecutor's argument regarding the intent element of aggravated sexual contact.  Instead, the defense attacked the reliability of the wife's allegations and advanced the theory that the appellant's wife fabricated the subsequent episodes of misconduct involving the ripping off of her panties.  In closing, trial defense counsel argued:

> [S]he had her mind set; she was going to set him up that night.  And boy did she set him up that night.  She gets a cell phone.  Whatever her intentions were that night, how far she wanted to take it, we have no idea, but she clearly had the ability to videotape.  Oh no. She didn't want anybody to see what was going on that night. . . . [Y]ou hear physical contact, you know we don't know what that physical contact is. . . . It's consistent that [sic] her kicking at him and he's smacking at her legs. . . . Everything else she's making up.  Every single thing else she is making up.  This is her effort to absolutely bury this guy. . . . I think it is very clear when you listen to that tape, and when he closes that door he was done with her for that night.  I think common sense tells you that he had zero intention to come back into the room.  He did not go back into that room on multiple occasions. . . . I think I have shown you that she's making this stuff up.[9]

---

[6] *Id*. at 293.

[7] *Id*. at 318.

[8] *Id*. at 319.

[9] *Id*. at 323-30.

The appellant was acquitted of the offense of attempted rape, in violation of Article 80, UCMJ, by attempting to penetrate his wife's vagina with his penis by unlawful force, to wit: ripping off her panties. However, the members convicted the appellant of the alternative offense of aggravated sexual contact for touching his wife's legs with unlawful force when ripping off her panties, as well as assault consummated by battery for striking his wife on her lower back.

**DISCUSSION**

**Legal and Factual Sufficiency**

The appellant challenges the legal and factual sufficiency of his conviction for aggravated sexual contact. We review cases *de novo* for legal and factual sufficiency pursuant to Article 66(c), UCMJ. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citation omitted).

The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond reasonable doubt "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses[.]" *Id.* at 325. "Such a review involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Washington*, 57 M.J. at 399. As a part of this review, we "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990) (citation and internal quotation marks omitted). We then make an "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. In doing so, we note that the Government may prove specific intent with circumstantial evidence. *United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014).

To convict the appellant of aggravated sexual contact, the Government was required to prove the appellant committed a "sexual contact" by using unlawful force. Article 120(g)(2), UCMJ, provides the following definition of sexual contact:

> The term 'sexual contact' means—(A) touching, or causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate, or degrade any person; or (B) any touching, or causing another person to touch, either directly or through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person.

Each subsection within the definition sets out the *actus reus* required to constitute sexual contact, as well as the corresponding intent requirement. Under Article 120(g)(2), the touching of a person's leg may fall under either subsection (A) or (B) depending on the location of the touch.

Here, we agree with the military judge's observation that the testimony of the appellant's wife did not allege a touching of her inner thigh. Therefore, we apply the standard in subsection (B) of Article 120(g)(2), UCMJ, to the evidence, evaluating whether we are convinced beyond reasonable doubt that the appellant touched his wife's outer thighs with a specific intent to arouse or gratify his or another person's sexual desires.

In doing so, we first acknowledge the evidence establishing that the appellant made contact with the outside of his wife's thighs when he attempted to forcibly remove her underwear. During the trial, the appellant's wife testified that as the appellant attempted to pull her underwear off, she attempted to hold them up. This resulted in her underwear tearing in several locations, tears that were caused by force and not by normal wear on the garment.[10] Her testimony was further corroborated by bruising and soreness to her outer thighs documented during a follow-up medical appointment after the offense was reported.

However, by itself, evidence of forcible contact with his wife's outer thighs is insufficient. We must also be convinced beyond reasonable doubt that the appellant specifically intended for this particular contact to arouse or gratify his or another's sexual desires. Art. 120(g)(2)(B). A "generalized evil desire for gratification" is not enough. *United States v. Sampson*, 7 M.J. 513, 516 (A.C.M.R. 1979) (finding in the case of attempted rape that the specific intention to commit rape and the overt act must each be proven by the evidence, and proof of the overt act alone cannot be "boot strapped" up to prove the specific intent required); *see also United States v. Martin*, 2014 CCA LEXIS 137 at *20-*21 (Army Ct.Crim.App. 28 Feb 2014) (remarking that, for an attempted aggravated sexual contact, the relevant question of fact is whether "appellant possessed the specific intent to . . . cause a sexual contact *by force*" under "the specific facts and circumstances of this case").

While we are satisfied that the appellant intended to arouse or gratify his sexual desires in a generalized sense, we are not convinced that he intended to arouse or gratify those desires through the specific touching of his wife's outer thighs as required by the statute. Instead, the touching appears to us to be incidental to his efforts to remove her panties in order to commit some other contact that would have been arousing or gratifying. The record simply does not convince us otherwise.

This finding is limited to the peculiar facts of this case and is not intended to suggest that making bodily contact while forcibly removing a person's clothing could never constitute aggravated sexual contact. Here, we differ with the dissent only as to

---

[10] *Id*. at 282.

whether the evidence available in this case is sufficient to convince us that the appellant possessed the requisite intent when he touched his wife's outer thigh.

After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we find the evidence in the record before us factually insufficient to support the appellant's conviction for aggravated sexual contact. We nonetheless find that the record establishes beyond a reasonable doubt each element of the lesser included offense of assault consummated by battery, to wit: unlawfully touching his wife's legs and ripping off her panties. *See United States v. Odom*, 53 M.J. 526, 536 (N.M.Ct.Crim.App. 2000) (affirming an appropriate lesser included offense when satisfied that each element has been established by legal and competent evidence beyond reasonable doubt).

**Instructional Error**

After the close of evidence, the military judge instructed the members on the elements and definitions of aggravated sexual contact:

> In order to find the accused guilty of this offense, you must be convinced by by [sic] legal and competent evidence beyond a reasonable doubt of the following 3 elements. First, that on board Camp Kinser, Okinawa Japan, on or about 6 April 2014, the accused committed it [sic] sexual contact upon [his wife] to wit: he touched her legs, touched her on her legs, and ripped off her pantines [sic]; and second, that the accused did so by causing harm to his wife to wit: ripping off her panties; and three, that the accused did so without the consent of his wife.[11]

The military judge followed up with definitions for both "bodily harm" and "threatening or placing a person in fear," terms related to elements of the separate offense of abusive sexual contact, a violation of Article 120(d), UCMJ.

Finally, the military judge instructed the members that they could consider the lesser included offense of assault consummated by battery if they were convinced by legal and competent evidence that the appellant did bodily harm to his wife by touching her legs and by ripping off her panties. He provided the appropriate definitions and elements for this lesser included offense before alerting the members that aggravated sexual contact and assault consummated by battery differed in that:

> [T]he offense charged requires as an element that you be convinced beyond a reasonable doubt that the accused specifically intended to commit sexual contact upon [his wife]. [Where-as] the lesser offense [of] assault consummated by battery does not include the sexual element.[12]

---

[11] *Id.* at 309.

[12] *Id.* at 311.

Neither party objected to these instructions.

Whether members were properly instructed is a question of law we review *de novo*. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). Where there is no objection to an instruction at trial, we review for plain error. *Id.* at 22-23 (citing *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013)). Under the plain error analysis, the appellant "has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right" of the appellant. *Id.* at 23-24 (citation and internal quotation marks omitted).

Both parties agree that the military judge's instructions constituted plain or obvious error in that his instructions only required the members to find that the appellant's actions "caused harm" without the consent of the victim, vice the more vigorous "unlawful force," that is, "the use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or inflicting physical harm sufficient to coerce or compel submission by the victim." Article 120(g)(5), UCMJ. The parties also agree that the inclusion of the extraneous definition of "threatening or placing a person in fear" constituted plain or obvious error.[13] As a result, we turn our eyes to an analysis of whether these errors materially prejudiced a substantial right of the appellant.

In the case of instructional error that omits or incorrectly describes the elements of an offense, we must be "satisfied beyond a reasonable doubt that the omitted elements were both 'uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.'" *Payne*, 73 M.J. at 25-26 (quoting *Neder v. United States*, 527 U.S. 1, 17 (1999)).

By our action below, in which we disapprove the aggravated sexual contact offense for factual insufficiency and approve the lesser included offense of assault consummated by battery, the malapropos instruction to the greater offense is made moot. As a result, the element of "unlawful force" and the inclusion of "threatening or placing a person in fear" are now superfluous. Additionally, given that the members were instructed on the correct elements and definitions of the lesser included offense of assault consummated by battery; that the prosecutor did not attempt to capitalize on the other erroneous instructions by the military judge; and that the proof of bodily harm by touching the victim's leg and ripping of her panties was overwhelming, we find beyond reasonable doubt that the instructional error did not materially prejudice a substantial right of the appellant.

**Sentence Reassessment**

Courts of Criminal Appeals (CCA) can often "modify sentences 'more expeditiously, more intelligently, and more fairly' than a new court-martial[.]" *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013) (quoting *Jackson v. Taylor*, 353

---

[13] Appellant's Brief on Specified Issue of 2 Mar 2016 at 5-7; Answer on Behalf of Appellee of 1 Apr 2016 at 9-11.

U.S. 569, 580 (1957)). In such cases, CCAs "act with broad discretion when reassessing sentences[.]" *Id.*

Reassessing a sentence is appropriate if we are able to reliably determine that, absent the error, the sentence would have been at least of a certain magnitude. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000). A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

We base these determinations on the totality of the circumstances of each case, guided by the following "illustrative, but not dispositive, points of analysis":

> (1) Whether there has been a dramatic change in the penalty landscape or exposure.

> (2) Whether sentencing was by members or a military judge alone.

> (3) Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

> (4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*Winckelmann*, 73 M.J. at 15-16.

Under all the circumstances presented, we find we are able to reassess the sentence and that it is appropriate for us to do so. Although the maximum punishment decreased from 20 years' confinement and a dishonorable discharge to one year confinement and a bad-conduct discharge and the appellant elected to be sentenced by a panel of members, all other factors favor reassessment. First, this court has extensive experience and familiarity with the remaining convictions, as none presents a novel issue in aggravation. Second, the gravamen of the aggravated sexual contact and assault consummated by battery is sufficiently equivalent as the latter involved the same underlying acts by the appellant. Third, all evidence in aggravation, extenuation and mitigation remains, and no new forms or sources of sentencing evidence are apparently more relevant under the new offense vice the old. As a result, the importance of the evidence adduced on the merits and at sentencing remains the same regardless of the specific offense in this case.

Taking these factors as a whole, we can confidently and reliably determine that absent the error, the members would have sentenced the appellant to a similar sentence; that is, a similar period of confinement, reduction in rank, and a discharge. As a result, we conclude that a sentence to six months' confinement, reduction to pay grade E-1, and

a bad-conduct discharge is an appropriate punishment for the remaining offenses and this offender—thus satisfying the *Sales* requirement that the reassessed sentence not only be purged of error, but appropriate. *Sales*, 22 M.J. at 308.

## CONCLUSION

The finding of guilty to aggravated sexual assault in violation of Article 120, UCMJ, is set aside. We approve a finding of guilty to the lesser-included offense of assault consummated by battery in violation of Article 128, UCMJ, as follows:

> In that Sergeant Jeremiah M. Loeffler, U.S. Marine Corps, on active duty, did, on board Camp Kinser, Okinawa, Japan, on or about 6 April 2014, unlawfully touch A.L., his wife, on the legs and rip her panties.

The remaining findings are affirmed. We affirm so much of the sentence as provides for confinement for six months, reduction to pay grade E-1, and a bad-conduct discharge.

Senior Judge FISCHER concurs.

CAMPBELL, Judge (concurring in part and dissenting in part):

While I agree that the specific charged contact must be accompanied by the requisite intent, I cannot imagine that the completely naked appellant did not intend to arouse or gratify sexual desire when, on a bed in their home, he grabbed his wife's panties and pulled them down. The majority's conclusion otherwise, based on an unduly mechanical and legalistic analysis, seem devoid of common sense inferences and relevant knowledge of the ways of the world. In finding the appellant not guilty of attempted rape, apparently the members did not believe that he intended to penetrate his wife by force, if necessary. Yet that verdict does not lead to reasonable doubt about his sexual desires. *See United States v. Martin*, 2014 CCA LEXIS 137 at *16 (Army Ct.Crim.App. 28 Feb 2014) (rape and aggravated sexual contact convictions affirmed); *United States v. Sampson*, 7 M.J. 513, 516 (A.C.M.R. 1979) (indecent assault conviction affirmed); and *United States v. Polk*, 48 C.M.R. 993, 997-98 (A.F.C.M.R. 1974) (indecent assault conviction affirmed). Consequently, I must part with the majority in its finding the aggravated sexual contact conviction factually insufficient. But I agree that there was instructional error. Thus, except for the sentence reassessment, I join the remainder of the majority opinion. Unable to affirm, given the instructional error, I would set aside the aggravated sexual contact conviction, without prejudice, and the sentence, and authorize a rehearing.

For the Court

R.H. TROIDL
Clerk of Court