# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WILLIAMS, COOPER, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant SHAWN M. MCGEE**
**United States Army, Appellant**

ARMY 20230511

Headquarters, Fort Carson
Jacqueline L. Emanuel, Military Judge
Lieutenant Colonel Kenton E. Spiegler, Acting Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Major Beau O. Watkins, JA; Lieutenant Colonel Autumn R. Porter, JA; Captain Amber L. Bunch, JA; Major Devin V. Vickers, JA (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Lieutenant Colonel K. M. Bohlke, JA; Major Justin L. Talley, JA; Lieutenant Colonel Anthony O. Pottinger, JA (on brief).

10 September 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHLACK, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted sexual assault in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (2019) [UCMJ]. The specification, as charged, alleged appellant penetrated his wife's vulva with his penis in violation of Article 120, UCMJ. The military judge found appellant not guilty of the original offense but guilty of attempted sexual assault. The military judge sentenced appellant to the mandatory dishonorable discharge. On appeal, appellant raised legal and factual sufficiency. The factual sufficiency of appellant's conviction warrants discussion and relief.

**BACKGROUND**

The appellant and the victim met in middle school, dated after college, and were married in 2016, just before appellant left for basic training. Four years later, appellant received orders for Fort Carson, Colorado. Just before the move, the couple learned they were expecting their first child. Appellant and his wife lived together until his wife surreptitiously moved, with their baby, back to her hometown of Rochester, New York, days after the incident forming the basis for appellant's attempted sexual assault conviction.

At trial, there was evidence appellant and victim engaged in consensual sexual activity involving "kinky" behavior throughout their marriage. This behavior included "choking" and "pushing" each other during sex. Additionally, appellant would sometimes pursue sex with the victim when she was not in the mood, and she would occasionally change her mind.

Approximately two months after the birth of their child, and within a day or two of the incident forming the basis of appellant's conviction, the victim's doctor informed her she had contracted trichomoniasis. The victim believed this to be a sexually transmitted disease and suspected appellant was unfaithful. Nonetheless, the victim consented to a shower with the accused soon thereafter. At some point, either before or immediately upon entering the shower, the victim told appellant that this was "just a shower" and appellant agreed.[1] After soaping the victim's body to wash her, the appellant rubbed his erect penis between the victim's thighs. He stimulated himself until he ejaculated. After they showered, the victim retired into the guest bedroom to rest. Appellant followed shortly thereafter. Before lying down together, the victim made appellant "pinky promise" that they were "just going to cuddle."

At some point after lying down, appellant attempted to remove the victim's underwear. The victim pulled them back up and said "stop." The appellant continued to pull her underwear down, nonetheless. Eventually, appellant got on top of the victim. Appellant moaned the victim's name, kissed her, and rubbed his erect penis "against the lips between [her] thighs." The victim testified she continued to tell appellant to stop. Initially, appellant did not relent and continued his attempt to have sex with his wife. However, once the victim "ugly cried," appellant immediately stopped and left the room. A few days later, the victim left Colorado with the couple's baby while appellant was at work.

After his wife and child returned to New York, the couple remained in contact. They exchanged text messages and discussed the sexual nature of their relationship,

---

[1] Based on the record, it is unclear whether appellant entered the shower after the victim was already inside, or vice versa.

generally, and the alleged sexual assault, specifically. The victim also communicated her mistrust of appellant due to her trichomoniasis diagnosis.

Regarding the sexual nature of their relationship, generally, the following text message exchange was offered at trial:

Appellant: I've pushed when you've said no in the past. Sometimes you give in and we have fun, other times you continue to say no and it stops. I won't force you against your will.

Victim: [Appellant].... listen to what you're saying. You're saying you don't respect me enough to stop when I don't wanna. You gotta push me till I say yes

. . . .

Appellant: No, I've pushed you a little in the past. When it was a no, it was a no.

Victim: ....reread what you sent

Appellant: Yes, sometimes a little persuasion gets you to say yes. Other times it doesn't. When it doesn't, I've left you alone.

Regarding the incident at issue, the following text message exchanges were offered at trial:

Victim: I couldn't handle thinking that if I ever said no to you, you wouldn't listen again. That's a scary thought.

. . . .

Appellant: I told you that I was terribly sorry for the actions I took. There never was any penetration. I let my l[u]st take over in [that] moment[]. Other then [sic] the verbal words no, every other action said yes. I stopped when I realized that I had gone too far. I'm terribly sorry that I pushed that boundary in [that] moment[]. I promised you that I would never do it again.

. . . .

Victim: The excuses you made, are to quell your mind . . . . I was already hurt and in shock and pain from the weird tests we got back . . .

3

. Hearing you blame me every which way makes me think what do you want from me . . .?

. . . .

Appellant: They're not to quell my mind. They do nothing for me. It is simply an explanation [for] you. *I misread the situation.* What I said was the truth. You never tried to stop me. You never pushed back. You moved your body with me. You even kissed me back a few times. The only part that said no was your words. I'm sorry that I pushed. *I'm sorry I miss interpreted and took the wrong actions.* But I did stop *when I realized.* I never penetrated you. I'm sorry for pushing you

. . . .

Victim: What does penetration have to do with anything?? You were still doing something against my wishes and making me kiss you. I kissed you back to get your attention . . . . my pushes were soft I had my hands on your chest several times . . . .

Appellant: I never once felt you push against me[.] What I did feel though was you [sic] hips moving with me[.] . . . And *I read that the wrong way*[.]"

. . . .

Appellant: I pushed the boundaries way too hard. I assaulted you . . . I feel horrible about it . . . I stopped when I realized I went way too far .
. . .

(emphasis added).

## LAW AND DISCUSSION

Specification 3 of Charge I alleged a violation of Article 120 (sexual assault without consent), UCMJ, a general intent crime. *United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019). The military judge acquitted him of the alleged specification but instead found him guilty of attempted sexual assault pursuant to Article 80, UCMJ, a specific intent crime. *See Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, ¶ 4.b. Appellant, in his sole assignment of error, argues his conviction is legally and factually insufficient because the government did not prove he possessed the requisite specific intent. Regarding factual sufficiency, we agree with appellant.

4

In a factual sufficiency review under the recently amended Article 66, UCMJ, this court "may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof." UCMJ art. 66(d)(1)(B). Once the showing is made, this court "may weigh the evidence and determine controverted questions of fact subject to—(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and (II) appropriate deference to findings of fact entered into the record by the military judge." *Id.* Thus, if "the [c]ourt is clearly convinced that the finding of guilty was against the weight of the evidence, the [c]ourt may dismiss, [or] set aside . . . a finding." *Id.* "[A]ppropriate deference" implies "that the degree of deference will depend on the nature of the evidence at issue." *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024). The statute affords us discretion to determine the appropriate level of deference. *Id.* at 130-31.

This court must satisfy two requirements to be "clearly convinced that the finding of guilt was against the weight of the evidence": (1) that the evidence, as the court has weighed it, does not prove that the appellant is guilty beyond a reasonable doubt, and (2) we must be "clearly convinced" of the correctness of this determination. *Id.* at 132.

Article 80, UCMJ, establishes the offense of "attempt." Article 80(a), UCMJ, defines attempt as "[a]n act, done with specific intent to commit *an offense* under this chapter." A specific intent offense requires "that the accused must have acted with the specific purpose of violating the law." *United States v. Axelson*, 65 M.J. 501, 512 (Army Ct. Crim. App. 2007) (internal citation omitted).

Accordingly, to convict appellant of attempted sexual assault in violation of Article 80, UCMJ, there must be proof beyond a reasonable doubt: (1) appellant committed a certain overt act; (2) *the act was done with the specific intent to commit the offense of sexual assault*; (3) the act amounted to more than mere preparation; and (4) the act apparently tended to effect the commission of the offense of sexual assault. *See MCM*, pt. IV, ¶ 4.b. (emphasis added).

There is proof beyond a reasonable doubt appellant committed various overt acts, satisfying the first element of Article 80, UCMJ. There is also evidence, beyond a reasonable doubt, proving appellant had the specific intent to perform the alleged sexual act (vaginal penetration with his penis). However, more is required for the second element in this case. To find appellant guilty of attempted sexual assault there must be proof beyond a reasonable doubt appellant specifically intended to do the sexual act *without his wife's consent*.

"The intention to commit the substantive crime alleged cannot be proven by the overt act[s] alone . . . the specific intention to commit the substantive offense and the overt act must each be proven by the evidence . . . ." *United States v.*

*Sampson*, 7 M.J. 513, 516 (A.C.M.R. 1979) (quoting *United States v. Polk*, 48 C.M.R. 993, 996 (A.F.C.M.R. 1974)) (alterations added, alterations in original omitted). The evidence of specific intent is "primarily circumstantial and must be carefully evaluated to [e]nsure that inferences from that evidence which tend to prove this element . . . are such that the element was proven beyond a reasonable doubt." *Id.*

In *United States v. Polk*, appellant was convicted of attempt to commit rape. In that case, appellant broke into the victim's home while she slept in her bed. 48 C.M.R. at 995. She was awakened by a naked appellant who immediately grabbed the victim by her throat with his hands and got on top of her, holding her down. *Id.* Once the victim stopped struggling, the accused talked to her, attempting to get her to "let [him] have her." *Id.* During the back-and-forth dialogue, appellant made it known that he would leave "if she would yield to his desires." *Id.* However, when it became clear the victim was not going to consent to sex, he released her neck, put on shorts, and left the house. *Id.* at 995-96.

The Air Force Court of Military Review reversed appellant's conviction for the attempted rape stating, "[o]nly a general criminal intent is required for the offense of rape . . . ." and "a generalized evil desire for gratification is not sufficient . . . to establish the specific intent required to prove an attempt to rape." *Id.* at 996.

It was clear in *Polk*, as it is in this case, the appellant wanted to have sexual intercourse with the victim. *Id.* at 995-96. Nonetheless, the Air Force court was not convinced beyond a reasonable doubt that appellant specifically intended to have sex with the victim *by force and without her consent*. *Id.* at 997. The conversation between appellant and the victim indicated his action "amounted to nothing more than an atrocious and gross attempt to persuade the victim to consent to intercourse." *Id.*

Here, evidence admitted at trial undermines a finding beyond a reasonable doubt that appellant had the specific intent to engage in a sexual act with his wife without her consent. Although the text messages corroborated the victim's testimony—that she said "no" when appellant moved from "cuddling" to sexual activities—they also revealed prior incidents where the victim said "no" but was persuaded by the appellant to consent, evidence indicating appellant's subjective view of the circumstances as he perceived them during the incident. The text messages show appellant was apologetic for "pushing" the victim too hard when trying to convince her to change her mind.[2] However, in the same text conversation, appellant emphasized that he would not have sex with her against her will. This evidence negates the fact that appellant possessed the specific intent to commit the offense of sexual assault.

---

[2] We place little weight in appellant's lay admission of "assaulting" the victim.

Additionally, the victim testified when she "ugly cried," appellant stopped trying to penetrate her or otherwise convince her to consent to sexual intercourse and left the room. The text messages corroborated this testimony and demonstrated appellant acted consistently with his prior behavior; he ceased his pursuit of sexual intercourse with his wife when he knew she was not going to consent. Appellant's prior behavior is not relevant to show he acted in conformity therewith during the charged incident but is evidence negating his specific intent to penetrate the victim without her consent, the substantive crime underlying the Article 80, UCMJ, conviction. In short, what the evidence tended to show was appellant's desire to have *consensual* sex with his wife.

As such, we are not convinced beyond a reasonable doubt that appellant had the specific intent to vaginally penetrate his wife without her consent and we are clearly convinced of the correctness of this decision.[3] *See Axelson*, 65 M.J. at 512 (to prove a specific intent offense the government must prove beyond a reasonable doubt "that the accused must have acted with the specific purpose of violating the law." (internal citation and quotations omitted)). Because we do not find the second element was factually sufficient, we need not address the remaining elements of Article 80, UCMJ.

## CONCLUSION

The findings of guilty to the lesser included offense of Charge I, Specification 3 and Charge I, are SET ASIDE and that Specification and Charge are DISMISSED. The sentence of a dishonorable discharge is SET ASIDE.

Judge WILLIAMS and Judge COOPER concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court

---

[3] We fully acknowledge that it may seem "anomalous to conclude that an accused may be exonerated from guilt of [a specific intent crime] because of an unreasonable mistake, whereas he could have been convicted lawfully of [the corresponding general intent crime] had penetration been effected under the same misapprehension." *United States v. Langley*, 33 M.J. 278, 281 (C.A.A.F. 1991). Nonetheless, in conducting our factual sufficiency review, we are left only to consider the evidence, measured against the offense for which appellant was found guilty by the military judge.